IN RE ESTATE OF LEO G. SAATHOFF, DECEASED.  EMMA CLARA SAATHOFF, APPELLANT, V. KENNETH SAATHOFF, APPELLEE.

295 N. W. 2d 290

Filed July 29, 1980.  No. 42815.

William M. Connolly of Conway and Connolly, for appellant.

Robert E. McKelvie of McKelvie & McNally, and William H. Stowell, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The appellant, Emma Clara Saathoff (Mrs. Saathoff), appeals from an order of the District Court for Webster County, Nebraska, which affirmed an earlier order entered by the county court of Webster County, Nebraska, finding an assignment made by Mrs. Saathoff to her son Kenneth Saathoff (Kenneth), involving property inherited by Mrs. Saathoff from her son Leo Saathoff, was valid and binding. We affirm.

Mrs. Saathoff's son Leo G. Saathoff died intestate on February 4, 1977, leaving his mother, Mrs. Saathoff, as his sole and only heir at law. He also left surviving his brother, Kenneth, and a sister, Dorothy Lutkemeier.

At the time of Leo's death, Mrs. Saathoff, a widow, was 81 years of age. She lived alone in a home owned by her daughter, Dorothy, which was located immediately across the street from where Kenneth lived, and which Mrs. Saathoff rented from Dorothy for $40 per month. Around 6:30 in the evening on Friday, February 4, 1977, Kenneth received a phone call requesting that he come to Leo's farm home because Leo had collapsed. Kenneth and his wife, Maxine, arrived at Leo's farm home between 6:30 and 7 p.m. and found Leo lying on the floor. Leo died soon after they arrived.

Kenneth and his wife, Maxine, returned to Mrs. Saathoff's house in Red Cloud to advise her that Leo had passed away. While there is much conflict in the evidence, there is sufficient evidence from which we can find that, when Kenneth advised Mrs. Saathoff that Leo had died, she threw her hands in the air and said, "I don't want no part of it, I'm getting too old to look after it. You can have it all."

On the following morning, Saturday, February 5, Kenneth and Maxine picked up Mrs. Saathoff and took her to Franklin, Nebraska, to make arrangements for Leo's funeral. After Kenneth and Mrs. Saathoff had finished making the funeral arrangements in Franklin they went back to Red Cloud, where Kenneth and Maxine had lunch at their home while Mrs. Saathoff waited for them. Around 1:30 p.m., Mrs. Saathoff accompanied Kenneth and Maxine to the offices of Jerry McDole (McDole), an attorney in Red Cloud, Nebraska, who had represented Leo during his lifetime. Mrs. Saathoff explained to McDole that she did not wish to inherit the property from Leo's estate, but that she wanted it to go directly

to Kenneth. McDole generally discussed how to ac-·complish transferring the property from Mrs. Saath-off to Kenneth and said that he would check and see how this could be accomplished, but that it would take an hour or two and she should go home and he would see her later that day, after he had the papers drawn up. McDole testified at trial as to Mrs. Saathoff's condition and demeanor during her office visit and concluded she was competent and acting voluntarily.

Later that afternoon, McDole's secretary, Doris Boller, a niece of Maxine Saathoff, came to Mrs. Saathoff's house with the assignment for Mrs. Saath-off's signature. The two of them sat down at the kitchen table and Ms. Boller read the assignment to Mrs. Saathoff. There is some testimony, though in conflict, that Mrs. Saathoff was of the opinion that if she kept the property from Leo's estate she would lose her social security. There is no evidence, how-ever, to support the claim that Kenneth or McDole ever advised her of that fact or that she made in-quiry of either of them about that fact. After she executed the assignment she was heard to say, "It's signed now. Dorothy can't do nothing about it."

The assignment provided that Dorothy was to re-ceive one-third of the livestock owned by Leo, the balance of said livestock and all real estate and per-sonal property owned by Leo at the time of his death to go to Kenneth. Kenneth had helped Leo with the farming over the years for which he had received no compensation.

When Dorothy returned to Red Cloud on Saturday evening, she was advised by Mrs. Saathoff about the assignment. On Monday morning, Dorothy and her husband, Harold Lutkemeier, went to McDole's of-fice and asked for a copy of the assignment. McDole said he could not give them a copy without permis-sion from Mrs. Saathoff and asked to have Mrs. Saathoff authorize him to give Dorothy a copy of the

assignment. Mrs. Saathoff then telephoned McDole and asked him to return the assignment to her. She advised him at that point that the assignment did not reflect her intention and that she had "changed her mind." At no time did she advise McDole that she had been unaware of what she signed or that she had been unduly influenced. She simply indicated that she had changed her mind.

McDole intended to deliver to Dorothy and her husband a copy of the assignment but, through error and oversight, actually delivered to Dorothy the original executed document. Dorothy obtained possession of the document on February 7, 1977, and it remained in her possession until ordered by the county court on November 3, 1977, to be filed with the court. On February 18, 1977, a petition for formal appointment of a special administrator and a petition for formal adjudication of intestacy, determination of heirs, and formal appointment of a personal representative was filed by Mrs. Saathoff. On March 22, 1977, a motion to set aside the petition of Mrs. Saathoff was filed, together with a copy of the assignment and release of interest previously signed by Mrs. Saathoff. The county court of Webster County, Nebraska, then ordered the original of the assignment to be filed with the court and determined, after hearing, that the assignment had been validly executed and delivered and that the property should be distributed as provided for in the assignment. Mrs. Saathoff appealed that order to the District Court for Webster County, Nebraska, which thereafter affirmed the decision of the county court.

Mrs. Saathoff raises several assignments of error which may be generally described as follows: (1) That the assignment was obtained from her by undue influence; (2) That she was incompetent and did not have the capacity to make a gift at the time she executed the assignment; (3) That there was no delivery of the assignment, and therefore, she was

entitled to recall the assignment; and (4) That the trial court erred in not permitting her to testify as to matters subsequent to the execution and delivery of the assignment which were intended to show a contrary intent.

We turn first to the question of whether there was evidence of undue influence.

The elements necessary to be established to warrant the rejection of a written instrument on the ground of undue influence are: (1) That the person who executed the instrument was subject to undue influence; (2) that there was opportunity to exercise undue influence; (3) that there was a disposition to exercise undue influence for an improper purpose; and (4) that the result was clearly the effect of such undue influence.

*Dunbier v. Rafert,* 170 Neb. 570, 103 N.W.2d 814 (1960) (syllabus of the court).

While an examination of the record discloses that Mrs. Saathoff was obviously distressed upon learning of Leo's death, there is no evidence to support the existence of the necessary elements of undue influence. The evidence established that Mrs. Saathoff was a person of strong will, while Kenneth was quite to the contrary. There is no basis to assume that Mrs. Saathoff was subject to undue influence. It may very well be that, if she had been given an opportunity to more carefully reflect on what she was doing, she might have chosen otherwise; there is no evidence, however, that she was subject to undue influence. Likewise, there is no evidence that there was an opportunity for Kenneth to exercise such undue influence. The time Kenneth was alone with Mrs. Saathoff from the time of Leo's death until the execution of the document was relatively short and insufficient to establish any evidence of undue influence on Kenneth's part. The mere fact that Mrs. Saathoff concluded that she did not wish to

acquire the property at her age, but rather wished her children to have it, does not establish undue influence. Nor does the fact that she desired Kenneth, who had helped Leo farm and who had far less than Dorothy, to have more of Leo's property than Dorothy support a claim of undue influence.

> [The] undue influence which will void a . . . (gift) is an unlawful and fraudulent influence which controls the will of the donor. The affection, confidence, and gratitude of a parent to a child which inspires a gift is a natural and lawful influence and will not render it voidable unless such influence has been so used as to confuse the judgment and control the will of the donor.

*Kolc v. Krystyniak,* 196 Neb. 16, 19, 241 N.W.2d 348, 350 (1976). The fact that the division was disproportionate is not sufficient to make the assignment invalid.

> The court, in examining the matter of whether a deed was procured by undue influence, is not concerned with the rightness of the conveyance, but only with determining whether it was the voluntary act of the grantor. The fact that the grantor has others who are proper subjects to receive his bounty can be considered by the court only as it bears upon the validity of the conveyance.

*Rule v. Roth,* 199 Neb. 746, 751, 261 N.W.2d 370, 373 (1978). See, also, *Guill v. Wolpert,* 191 Neb. 805, 218 N.W.2d 224 (1974). We simply are unable to find evidence that the execution of the assignment by Mrs. Saathoff was a result of undue influence asserted by Kenneth.

Likewise, with regard to the contention that Mrs. Saathoff was incompetent at the time she made the assignment, we, likewise, are unable to find evidence in the record.

> In order to set aside an instrument or in-

> struments . . . for want of mental capacity on the part of the person executing such instruments, the burden of proof is upon the party so asserting to establish that the mind of the person executing such instruments was so weak or unbalanced when the instruments were executed that he could not understand and comprehend the purport and effect of what he was doing.

*Dunbier v. Rafert, supra* at 589, 103 N.W.2d at 827. Again, the evidence in this case is simply insufficient to prove incompetency on Mrs. Saathoff's part. Not only is it clear that Mrs. Saathoff understood what it was she was doing; she was able to relate it to Dorothy immediately upon Dorothy's arriving in Red Cloud. There is some indication, though the reason is not clear, that Mrs. Saathoff, indeed, changed her mind after Dorothy returned. Changing one's mind after completing a valid gift is not the same as being incompetent when making the gift and does not result in causing the gift to be set aside. While the evidence is clear that Mrs. Saathoff was distressed by reason of her son's death, it is likewise clear that she was not incompetent. She conducted herself in a host of ways and performed numerous acts, including making arrangements for her son's funeral and selecting his casket. Her act in giving the property mostly to her son and only partly to her daughter may have been impetuous; it was not the result of incompetency.

Turning then to the question of the effect of the delivery, we find that when Mrs. Saathoff executed the assignment, she delivered it to McDole's secretary with the intent that it be delivered to Kenneth and with the further intent that she no longer have anything more to do with the assignment.

> Whether or not a deed [or other instrument conveying an interest in property] has been delivered is largely a question of intent

to be determined by the facts and circumstances of the particular case. [Citations omitted.]

No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient.

*Milligan v. Milligan,* 161 Neb. 499, 503, 74 N.W.2d 74, 77 (1955).

"Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift." 28 C.J. 640.

*Kennedy v. Nelson,* 125 Neb. 185, 190, 249 N.W. 546, 548 (1933).

"To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee." [Citation omitted.] . . . "The essential elements of a gift inter vivos are donative intent, delivery, and acceptance. Once it is ascertained that it was the intention of the donor to make a gift inter vivos of an undivided interest in a chattel or chose in action, and all is done under the circumstances which is possible in the matter of delivery, the gift will be sustained. . . ." [Citation omitted.]

*Rorabaugh v. Garvis,* 198 Neb. 223, 226, 252 N.W.2d 161, 163 (1977).

An examination of the record discloses that Mrs. Saathoff made no reservation and had no hesitation about the execution of the assignment or its delivery

to McDole's secretary. There is simply no dispute that she executed the document intending that it be a valid document and gave it to McDole's secretary for the purpose of doing whatever needed to be done with the document so as to make a valid gift at once. It must be kept in mind that, at that point in time, it had not yet been determined by both Kenneth and Dorothy, or by Mrs. Saathoff, for that matter, who would handle the probate of the estate. Kenneth asked McDole to do so, but neither Dorothy nor Mrs. Saathoff had agreed. The delivery of the document to the court would not be necessary until the estate was filed. Delivering the document to McDole was equivalent to delivering it to the interested parties in that Mrs. Saathoff intended to be free of any further interest in the property. There is no indication or evidence that there was any reservation on Mrs. Saathoff's part, or any intent by her, to reserve any rights in the property at the time that the assignment was delivered to McDole's secretary. We believe that the evidence is sufficient to support a finding that there was an intent to make delivery and, in fact, delivery was made. "Where a grantor has thus conveyed his property, he cannot subsequently, by withdrawing or destroying the deed, or by other acts indicating a subsequent change of intention, affect the transaction thus completed." *Milligan v. Milligan, supra* (syllabus of the court).

Mrs. Saathoff maintains that the trial court erred in not permitting testimony of subsequent events and statements by her which were hostile to the intent of making a gift. The trial court's ruling in that regard was correct. We have previously said:

> Acts and declarations of the grantor subsequent to the time of the alleged delivery, in hostility to the deed, are incompetent as against the grantee. But acts and declarations in support thereof are admissible, be-

cause they are adverse to the interests of the only person who at the time has any interest in overthrowing such deed.

*Milligan v. Milligan, supra* (syllabus of the court). The most that Mrs. Saathoff could offer by way of testimony was to the effect that she had changed her mind and did not now intend to make the gift which she had previously made. That was not competent or relevant to the issues of whether the execution was as a result of undue influence or incompetency or whether there was, in fact, a delivery.

As we noted at the outset, evidence in this case was, to a large extent, in irreconcilable conflict and, while it is true that, this being an equity matter, we review it de novo, it is likewise true that in an appeal in an equity action, "if there is irreconcilable conflict in a material issue, this court will, in determining the weight of evidence of witnesses who appeared in the trial court to testify, consider the fact that the trial court observed them and their manner of testifying." *Kolc v. Krystyniak, supra* at 20, 241 N.W.2d at 350.

Keeping that rule in mind, our examination of the record convinces us that the appellant did not meet her necessary burden and the trial court was correct in affirming the findings made by the county court who saw and heard the witnesses. We, likewise, find that the execution of the assignment was not the result of undue influence nor was it made at a time when the assignor was incompetent and that there was a complete and absolute delivery. Accordingly, then, the judgment must be affirmed.

AFFIRMED.