CAROL J. BISHOP, APPELLEE, v. STANLEY J. HOTOVY, APPELLANT.
385 N.W.2d 901

Filed May 2, 1986.    No. 85-076.

Larry J. Karel of Karel Law Offices, for appellant.

George E. McNally, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Stanley J. Hotovy, appeals from a judgment entered by the district court for Colfax County, Nebraska, finding that Hotovy and the appellee, Carol J. Bishop, are each owners of an undivided one-half interest in the real estate involved in the action and ordering that a referee be appointed and the property partitioned. As the basis for his appeal, Hotovy maintains that the district court erred in failing to find that the property was obtained by undue influence exerted by Bishop upon Hotovy. Further, Hotovy maintains that the district court erred in failing to find that a certain document drafted by the parties and entitled "Rental Purchase Agreement" constitutes a lien or encumbrance upon the property in favor of Hotovy. For reasons set out herein we believe the judgment of the district court should be affirmed.

The record discloses that Hotovy, a 52-year-old man, was, at all times material to this action, living with his parents in Schuyler, Nebraska. In 1978 Hotovy met Bishop. At that time she was in the process of obtaining a divorce from what the

record reflects was a third marriage. Between 1978 and 1982, Bishop and Hotovy became close friends and developed an intimate relationship. During that same period of time, Hotovy apparently gave Bishop a sizable amount in both money and property. When Bishop's trailer home was repossessed, Hotovy paid off the loan so that Bishop could obtain possession of the trailer again. The record also reflects that during this period of time, Hotovy placed Bishop's name on certain certificates of deposit. Later, at the request of Hotovy's attorney, her name was removed. Bishop also voluntarily removed her name from certain savings accounts which Hotovy had established and which bore Bishop's name. An examination of Hotovy's checking account reflects that he began paying a large number of expenses for Bishop.

In 1982 Hotovy purchased a house and had the deed placed in the names of Hotovy and Bishop, as joint tenants. The sales agreement was executed on February 22, 1982, and the deed executed on March 9, 1982. Sometime later, Bishop and Hotovy executed a document entitled "Rental Purchase Agreement." At best, the document is extremely ambiguous and does little to assist us in this matter. The document provided as follows:

### RENTAL PURCHASE AGREEMENT

I, the undersigned purchaser, hereby agree to purchase the property described as follows:

Located at 709 E. 9th St., Schuyler, Nebraska. All of Lot three (3), in Block two (2), of South Schuyler, an addition to the City of Schuyler, Colfax County Nebraska.

· Purchase price of property $52,500.00, Carol J. Bishop and Stanley Hotovy are purchasers.

Carol J. Bishop agrees to be one-half owner, by putting one-half of mobile home, ($5,000.00), as downpayment. The remainder of the home will be paid by $80.00 monthly payments for 25 years, to Stanley J. Hotovy.

The agreement was signed by both Carol J. Bishop and Stanley J. Hotovy as "UNDERSIGNED" and notarized.

The evidence is in conflict as to who initiated all of the gift giving: Bishop maintains that Hotovy did it of his own free will, and Hotovy claims that Bishop kept making demands upon him. Hotovy does, however, concede that Bishop did not make

any threats and did not say that she would do anything, e.g., leave him, if he did not buy her a house. According to Hotovy, if Bishop "wanted something . . . she just kept after me until I finally broke and did some of those things. You know, it just gets on a person's nerves if you sit there and they come after you and keep coming after you." The record, however, is simply devoid of any evidence to indicate that Hotovy was unduly pressured by Bishop or anyone else into buying the house. It appears that, at the time the house was purchased, Bishop and Hotovy had developed an intimate relationship and Hotovy was attempting to simply bestow favors upon Bishop.

In an effort to establish that Bishop had unduly influenced Hotovy, he offered the testimony of Sister Marilyn Uhing, a counselor with United Catholic Social Services, and Dr. Emmet Kenney, a psychiatrist. We believe, however, that the testimony is not sufficient to establish *undue* influence.

According to Sister Uhing, Hotovy described his relationship with Bishop as turbulent and stressful, and while Sister Uhing testified that Hotovy often got himself into a turmoil over personal relationships, he was still able to carry on business transactions such as buying a house. To the same effect, Dr. Kenney testified that while Hotovy had poor judgment in personal relationships and tried to use financial arrangements to solve his problems in these personal relationships, he was nevertheless unaffected in his business knowledge by these problems. Specifically, Dr. Kenney testified that, in buying a house on March 9, 1982, Hotovy would know the value of the house and the mechanics of the proceeding. Dr. Kenney testified: "[T]here's nothing wrong with his [Hotovy's] smarts, there's nothing wrong with his day-to-day knowledge and mechanics — the only true area of disfunction [sic] is when he draws an illogical conclusion about basic human relationships."

The record further discloses that Hotovy owns a number of farms which he manages himself along with property of his mother. Finally, the record discloses that Hotovy alone negotiated the purchase price of the house. It was also Hotovy who instructed the real estate agent to put the title in the house in joint tenancy and Hotovy who handled all loan arrangements for buying the house.

The difficulty with Hotovy's position in this case is that he seeks to equate *influence* with *undue influence*. They are not the same. In *Kolc v. Krystyniak*, 196 Neb. 16, 19, 241 N.W.2d 348, 350 (1976), we said: "[The] undue influence which will void a . . . (gift) is an unlawful and fraudulent influence which controls the will of the donor." And in *Rule v. Roth*, 199 Neb. 746, 751, 261 N.W.2d 370, 373 (1978), we said: "The court, in examining the matter of whether a deed was procured by undue influence, is not concerned with the rightness of the conveyance, but only with determining whether it was the voluntary act of the grantor."

In determining whether the act was voluntary and whether the party seeking to set aside the conveyance has sustained his or her burden, we said in *In re Estate of Saathoff. Saathoff v. Saathoff*, 206 Neb. 793, 798, 295 N.W.2d 290, 294 (1980):

> The elements necessary to be established to warrant the rejection of a written instrument on the ground of undue influence are: (1) That the person who executed the instrument was subject to undue influence; (2) that there was opportunity to exercise undue influence; (3) that there was a disposition to exercise undue influence for an improper purpose; and (4) that the result was clearly the effect of such undue influence.

See, also, *In re Estate of Wagner*, 220 Neb. 32, 367 N.W.2d 736 (1985).

The law is clear that the burden is on the party alleging the execution of a deed was the result of undue influence to prove such undue influence by clear and convincing evidence. *Craig v. Kile*, 213 Neb. 340, 329 N.W.2d 340 (1983). We are simply unable to hold that Hotovy has established by clear and convincing evidence that the influence exerted by Bishop upon Hotovy was undue, though we concede that undoubtedly their relationship played a significant role in Hotovy's action in this case.

Likewise, the district court's conclusion that the "Rental Purchase Agreement" does not constitute a lien upon the property was correct. A person claiming the existence of a lien has the burden of proving the existence of the lien. See *Columbus Fed. S. & L. Assn. v. Swails Constr. Co.*, 215 Neb.

287, 338 N.W.2d 593 (1983).

Hotovy maintains that the "Rental Purchase Agreement" provides that Bishop will purchase her half of the property by paying $80 per month for 25 years. Bishop, on the other hand, maintains that the "Rental Purchase Agreement" simply affords her the right to purchase Hotovy's half. Regardless of what the "Rental Purchase Agreement" may mean—and, at best, it is ambiguous—it does not in any way create by law or contract a lien upon the property. For these reasons the decision of the district court must in all respects be affirmed.

AFFIRMED.

WHITE, J., participating on briefs.