JEFFREY LAKE DEVELOPMENT, INC., A NEBRASKA NONPROFIT CORPORATION, AND MIDWAY WILDLIFE AND RECREATION CLUB, A NEBRASKA NONPROFIT CORPORATION, APPELLEES, V. THE CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.

633 N.W. 2d 102

Filed September 7, 2001.   No. S-00-376.

Michael C. Klein, of Anderson, Klein, Peterson & Swan, for appellant.

Steve Windrum for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Central Nebraska Public Power and Irrigation District (Central) entered into two leases which are the subject of this

case: one with Jeffrey Lake Development, Inc. (JLDI), dated May 1, 1980, and another similar lease with Midway Wildlife and Recreation Club (MWRC) dated May 1, 1981. These leases respectively concerned portions of the lakefront property surrounding Jeffrey and Central Midway Lakes and contemplated the further sublease by JLDI and MWRC of portions of the leased property for construction of cabin residences and for recreational use. In 1994, Central sought to unilaterally change the terms of the leases in order to begin charging rent. JLDI and MWRC brought an action against Central seeking a declaratory judgment and an injunction to prevent Central from changing the lease. The trial court granted summary judgment in favor of JLDI and MWRC. The Nebraska Court of Appeals reversed, and remanded for a trial. *Jeffrey Lake Dev. v. Central Neb. Pub. Power*, 5 Neb. App. 974, 568 N.W.2d 585 (1997). Neither party sought further review of this decision. The trial court then heard the case on the merits and found for JLDI and MWRC after a bench trial. Central appeals the trial court's decision, and we moved the case to our docket pursuant to our power to regulate the caseloads of this court and the Court of Appeals.

## BACKGROUND

In 1980, Central entered into a lease with JLDI concerning portions of the lakefront property surrounding Jeffrey Lake. In 1981, Central entered into a substantially similar lease with MWRC concerning property surrounding Central Midway Lake, along with several other lakes. JLDI and MWRC are nonprofit associations that were formed for the purpose of managing the properties they lease from Central. JLDI and MWRC had originally entered into leases with Central concerning these properties in 1944 and 1945, respectively. Over the years, the parties executed several subsequent leases, none of which provided for the payment of cash rent to Central, but all of which contained terms JLDI and MWRC were required to meet in order to continue the lease.

The 1980 lease with JLDI defines the primary term to be 31 years but provides for an automatic annual 1-year extension, unless JLDI breaches the lease or the parties agree to modify it. The 1981 lease with MWRC provides for the same term. Neither lease provides for the payment of cash rent.

In 1994, Central's board of directors passed "Resolution 94-2" which authorized Central to offer a modification to the leases in order to provide, among other things, for rent to be paid by the sublessees to Central. The resolution also authorized Central to begin terminating the leases if the parties were unable to reach an agreement to modify the leases. JLDI subsequently filed this action, which MWRC later joined, seeking a declaratory judgment regarding the rights of the parties and an injunction to prevent Central from unilaterally modifying the leases. Central filed a cross-petition asserting that the lease to JLDI is invalid because of a conflict of interest on the part of one of its directors. Both parties filed motions for summary judgment, and the trial court granted JLDI and MWRC's motion. The Court of Appeals reversed. After trial on the merits, the trial court found for JLDI and MWRC. From this decision, Central appeals.

## ASSIGNMENTS OF ERROR

Central assigns, revised and restated, the following errors:

(1) The trial court erred in entering a declaratory judgment for JLDI and MWRC and in finding that the leases were not illegal, ultra vires, or void.

(2) The trial court erred in finding that the leases are not in violation of public policy and hence illegal and void.

(3) The trial court erred in finding that the Jeffrey Lake lease is not void and unenforceable under Neb. Rev. Stat. § 70-642.02 (Reissue 1996) due to a conflict of interest on the part of C.J. Hargleroad, a director of Central.

(4) The trial court erred in overruling Central's motion for new trial.

(5) The trial court erred in construing the terms of the leases.

## STANDARD OF REVIEW

An action for declaratory judgment under the provisions of Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1995) is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994). JLDI and MWRC's petition in this case seeks an injunction, whereas Central's cross-petition seeks a declaration that the leases are void. An action for injunction sounds in equity. *Omega Chem.*

*Co. v. United Seeds*, 252 Neb. 137, 560 N.W.2d 820 (1997). A suit on a contract is an action at law. *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989). Thus, while JLDI and MWRC's petition is an action in equity, Central's cross-petition is an action at law.

■ In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001).

■ In a bench trial of an action at law, the factual findings by the trial court have the effect of a jury verdict and will not be set aside unless they are clearly wrong. *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001).

■ In connection with questions of law and statutory interpretation, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Estate of Tvrz*, 260 Neb. 991, 620 N.W.2d 757 (2001); *Snyder v. EMCASCO Ins. Co.*, 259 Neb. 621, 611 N.W.2d 409 (2000).

## ANALYSIS

### ULTRA VIRES

Central first argues that the two leases constitute gifts of public property. Central is essentially arguing that the leasehold interests it gave to JLDI and MWRC, respectively, have value and that Central received no consideration or inadequate consideration in return for the leasehold interests. Central points to the fact that the leases do not provide for any rent to be paid to Central and that they are of indefinite duration. Central asserts that the trial court was clearly wrong in finding that noncash consideration existed. Central's conclusion is that if the leases actually constitute gifts of public property, then the leases are ultra vires, because Central is not authorized to make such gifts.

JLDI and MWRC, on the other hand, argue that in fact they did give consideration, pointing to numerous duties imposed

upon them under the 1980 and 1981 leases which were not imposed upon them under previous leases. Under the 1980 and 1981 leases, JLDI and MWRC were obligated to require their sublessees to build cabins on their subleased lots, and these cabins were required to be constructed upon a concrete slab. There are 128 subleases on Jeffrey Lake and 49 on Central Midway Lake. Values of the improvements range up to $75,000 apiece. The leases also imposed "general recreational responsibility" on JLDI and MWRC and required them to cooperate with the Nebraska Game and Parks Commission for the control and regulation of boating, swimming, and other uses of said property, "all for the best and safest uses of the facilities by the public." The leases obligate JLDI and MWRC to keep all respective leased premises, including those areas which are not subleased, free of refuse and in a "good, husband-like condition." Also under the leases, JLDI and MWRC are required to maintain and operate public wells and are required to protect Central's interest from adverse possession. JLDI and MWRC had none of these obligations under previous leases.

In addition to the above terms, JLDI and MWRC also agreed to the following conditions in the 1980 and 1981 leases: JLDI and MWRC respectively must destroy weeds from the entire leased area, including those areas not subleased. The leases prohibit using the leased land for commercial or business purposes. Moreover, under these leases, a sublessee may not sublease more than one of Central's lots. Under the terms of the leases, Central may vary the water level in the reservoirs at its discretion, and it may terminate the leases without recourse and destroy any improvements made if it has a need to enhance its electrical generating or irrigation facilities. JLDI and MWRC argue that the above requirements provided in the lease constitute legal detriments to JLDI and MWRC and are adequate consideration for the leasehold interest.

■ Under Neb. Rev. Stat. § 70-625 (Reissue 1986), Central has, subject to the limitations in the petition for its creation, "all the usual powers of a corporation for public purposes and may purchase, hold, sell, and lease personal property and real estate reasonably necessary for the conduct of its business." It is undisputed that the real estate in question was reasonably necessary

for the conduct of Central's business. Central argues, however, that it is required under Neb. Rev. Stat. § 70-655 (Reissue 1976) to charge rent on such real estate. Section 70-655 provides:

> The board of directors of any district . . . shall have the power and be required to fix, establish and collect adequate rates, tolls, rents, and other charges, for electrical energy, water service, water storage, and for any and all other commodities, services or facilities sold, furnished or supplied by the district, which rates, tolls, rents and charges shall be fair, reasonable, nondiscriminatory, and so adjusted as in a fair and equitable manner to confer upon and distribute among the users and consumers of commodities and services furnished or sold by the district the benefits of a successful and profitable operation and conduct of the business of the district.

Even if this section requires rent to be collected on these properties, such rent would not necessarily have to be cash rent, but would only have to be reasonable consideration. *Jeffrey Lake Dev. v. Central Neb. Pub. Power,* 5 Neb. App. 974, 568 N.W.2d 585 (1997). This section would merely require consideration. Thus, the question is whether the consideration that passed from JLDI and MWRC, respectively, to Central under the leases constituted reasonable consideration.

As noted above, the leases in question here require of JLDI and MWRC numerous performances and forbearances. In our de novo review, we conclude that JLDI and MWRC incurred legal detriment and that Central obtained benefit by entering into the respective leases. Because consideration was given in exchange for the leasehold interests, we find that the leases are not gifts and, as such, are not ultra vires.

PUBLIC POLICY

Central next argues that the leases are against public policy. The trial court in regard to the public policy issue stated:

> The Court has no difficulty in recognizing that the lots at Jeffrey Lake and Midway have substantial value, which value has increased over the years. That, however, does not lead to the conclusion that [Central] is giving away its property in violation of public policy. . . .

[JLDI and MWRC] also rightly point out that additional obligations were entered into by it when the last agreement was negotiated in 1980, including the maintaining of a cooperative relationship between the Game & Parks Commission for the recreational use of the lake and various requirements in regard to the cabins located upon the lake.

The Court certainly accepts the testimony by [Central] that Jeffrey Lake is simply a pass-through for the irrigation system developed by [Central]. While that may be the case, over the life of the agreement of the parties which had been in existence for close to 60 years, [Central] has never maintained Jeffrey Lake as merely a pass-through, but has recognized its recreational value through its agreement with [JLDI and MWRC] as well as the Game & Parks Commission. Also, it seems anomalous for [Central], at this late date, to claim that it has been violating the public policy of this State by giving away the property of a political subdivision, while continually participating in the maintenance and enhancement of the facilities at Jeffrey Lake. Given the circumstances of the lease arrangements, the obligations placed upon [JLDI and MWRC] under the lease agreement, the benefit to [Central] in regard to the FERC Licensing and goodwill received by the maintenance of the recreational facility, it seems clear that [Central] is not giving anything away, but is receiving a benefit for which it contracted and which it is obligated to comply with.

On appeal, Central argues that public policy imposes upon Central a duty to serve the public in Central's service area by furnishing electrical energy and water service at the lowest cost consistent with sound business judgment. Central maintains that because the leases in this case do not require cash rent and continue for an indefinite term, they impair Central's ability to discharge its duty to the public. As a result, Central concludes, the leases are against public policy and are thus illegal.

In *Southern Neb. Rural P.P. Dist. v. Nebraska Electric*, 249 Neb. 913, 546 N.W.2d 315 (1996), the claim was made by several rural electric utilities against the Nebraska Electric Generation and Transmission Cooperative, Inc., that the contracts with

the cooperative were void as against public policy. We held the contracts were valid, stating:

> " ' "It is not the province of courts to emasculate the liberty of contract by enabling parties to escape their contractual obligations on the pretext of public policy unless the preservation of the public welfare imperatively so demands. * * * 'the power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and . . . should be exercised only in cases free from doubt.' . . ." ' "

*Id.* at 918, 546 N.W.2d at 319, quoting *OB-GYN v. Blue Cross*, 219 Neb. 199, 361 N.W.2d 550 (1985), and *E. K. Buck Retail Stores v. Harkert*, 157 Neb. 867, 62 N.W.2d 288 (1954). Under our de novo review, we cannot say that in this case, the issue is free from doubt.

The fallacy of Central's argument is that it assumes that the provision of hydroelectric power and irrigation is the only public interest involved in this case. Certainly, the provision of power and irrigation under this statutory scheme is a public purpose, but so is the recreational use of these lakes. It would not be appropriate for this court to decide whether one public purpose should be given precedence over another. To hold these leases void as against public policy would be to declare the public interest in power and irrigation under these statutes to be superior to the public interest in the recreational use of these lakes. We are ill-equipped to make such a decision, and we conclude, as did the Court of Appeals, that "it is far better to allow the contract negotiated and drawn between Central, representing the electric power provider and irrigator on one side, and [JLDI and MWRC], representing those interested in recreation on the other, to stand rather than make a judicial determination that one public interest supplants another." See *Jeffrey Lake Dev. v. Central Neb. Pub. Power*, 5 Neb. App. 974, 988, 568 N.W.2d 585, 594 (1997). The respective parties to a contract bear risks that the conditions under which the contract was entered will change and become less favorable to them over the course of the contract's term. Here, the parties have bargained for the terms of the leases and have assumed risks that the conditions may change during the course of the lease. If we were to accept Central's argument,

then Central could terminate any of its contracts whenever conditions changed unfavorably for Central. In other words, anytime one of Central's contracts became a greater burden to Central than it would bear if it were free from the obligations of the contract, Central could terminate the contract on the ground that it is against public policy. Such a situation may benefit Central initially because it could relieve Central of any obligation to perform its existing contracts. However, parties contemplating entering contracts with Central would be deterred from doing so because they could not be assured of Central's performance. This would certainly impair Central's ability to perform its duty to the public. We decline to so "emasculate" the liberty of contract by setting aside the contracts on the ground of public policy. We therefore affirm the finding of the trial court in this regard.

## CONFLICT OF INTEREST

Central asserted in its cross-petition and now contends on appeal that under the provisions of § 70-642.02, the Jeffrey Lake lease is void. As proof of its claim, Central offered evidence to show that at the time Central's lease with JLDI was executed, Hargleroad was serving on Central's board of directors and was subleasing a lot from JLDI on Jeffrey Lake. Central contends that this evidence proves that Hargleroad held an interest prohibited by § 70-642.02, which states as follows:

> No member of the board of directors shall be interested, directly or indirectly, in any contract to which the district, or any one for its benefit, is a party, and any such director who shall have such an interest shall be subject to removal from office therefor by the remaining members of the board . . . . Such interest in any contract by a director shall void the obligation thereof on the part of the power district. Ownership of less than one percent of the outstanding stock of any one class of any corporation shall not constitute an interest, direct or indirect, within the meaning of this section.

Central concludes that because Hargleroad held such an interest in the sublease from JLDI, the lease is void under the terms of the statute.

There is no question that Hargleroad was not directly interested in the 1980 lease. The question presented is whether

Hargleroad's sublease from JLDI is an indirect interest under the terms of the statute. Central's argument on this issue assumes that a sublease of Central's land by one of Central's directors is, as a matter of law, an indirect interest that is prohibited by the statute. We have never so held under this or any other similar statutory prohibition of interested transactions, and we decline to make such an assumption now. The question of whether an interest exists under the statute is therefore a question of fact. See *Copple v. City of Lincoln*, 202 Neb. 152, 274 N.W.2d 520 (1979) (decision whether particular interest of public official is sufficient to disqualify him from going on or participating in actions taken by public body is factual one and depends on circumstances of particular case). As such, we review the trial court's determination on the issue for clear error. See *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001). The question then is whether the trial court committed clear error in finding that Hargleroad's interest is not an indirect interest under § 70-642.02.

An analysis of whether a director's interest is an indirect interest contemplated by the statutory prohibition depends on a showing that the potential for a conflict of interest exists. See, *Wyzykowski v. Rizas*, 132 N.J. 509, 524, 626 A.2d 406, 413 (1993) ("[a]n actual conflict of interest is not the decisive factor, nor is 'whether the public servant succumbs to the temptation,' but rather whether there is a potential for conflict"); *Griggs v. Princeton Borough*, 33 N.J. 207, 219, 162 A.2d 862, 869 (1960) ("it is the existence of such interests which is decisive, not whether they were actually influential"); *Delta Electric Const. Co. v. City of San Antonio*, 437 S.W.2d 602 (Tex. Civ. App. 1969). Because Central raised this issue in its cross-petition, it bore the burden to show that a potential conflict of interest exists on the part of Hargleroad.

The evidence Central presented on the issue shows only that Hargleroad was simultaneously a member of Central's board of directors and a sublessee of JLDI's. Central has not shown what powers Hargleroad had as a director that would give him the ability to influence the terms of a sublease between JLDI and a sublessee. Nor has Central shown the rights and duties of the parties to Hargleroad's sublease. Indeed, Central did not even

introduce Hargleroad's sublease into evidence, despite being requested to do so by the Court of Appeals in its opinion at the summary judgment stage of this case. Instead, Central merely introduced a blank sublease which may or may not have been similar to the one executed by JLDI and Hargleroad. Because Central bears the burden of proof on this issue, it must introduce evidence to show by a preponderance that a prohibited interest existed at the time the lease was executed. The trial court concluded that Central did not meet its burden, and we cannot say that this conclusion is clearly wrong.

## CONCLUSION

Based on our de novo review, giving weight to the fact that the trial judge heard and observed the witnesses in arriving at its conclusion, we find that the trial court did not err in finding that the leases from Central to JLDI and MWRC are not ultra vires, are not void as against public policy, and are not in violation of § 70-625. Furthermore, based on our review of the trial court's decision on Central's cross-petition, we conclude that the trial court was not clearly wrong in finding that Central had not met its burden of showing that Hargleroad's sublease was among those interests prohibited by § 70-642.02. Given our disposition of these issues, we need not address JLDI and MWRC's arguments that Central is barred by the doctrines of equitable estoppel and laches from asserting the invalidity of the leases. We also find Central's remaining assignments of error to be without merit.

We, therefore, affirm the trial court's order filed March 15, 2000, in all respects.

AFFIRMED.