SUSAN CARUSO, FORMERLY KNOWN AS SUSAN SEVENKER, APPELLEE, v. JAMES D. PARKOS, APPELLANT, AND VIRGINIA M. PARKOS, APPELLEE.

637 N.W.2d 351

Filed January 4, 2002. No. S-00-498.

962

Gregory G. Jensen, of the Jensen Law Office, for appellant.

Bradley D. Holtorf, of Sidner, Svodboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellee Susan Caruso.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## FACTUAL BACKGROUND

This is a quiet title action relating to certain real property in Valley County, Nebraska. Prior to June 20, 1997, the property was owned by Virginia M. Parkos and two of her children, Susan Caruso and Carol Nattress. Virginia held an undivided five-sevenths interest in the property, while Carol and Susan each held a one-seventh interest in the property.

In April 1997, Carol approached Virginia about receiving an early inheritance to pay for Carol's medical expenses. The proposal was that Virginia would convey her five-sevenths interest in the property to Carol and Susan and that Susan would then obtain a loan to pay Carol $50,000 for Carol's share of the property, thus providing Carol with the money to pay for needed medical care. Carol and Susan contacted Curtis Sikyta, Virginia's attorney, regarding preparation of a deed. A warranty deed was prepared and signed by Virginia on June 20, and the

deed was provided to Sikyta for recording. Another deed, conveying Carol's interest in the property to Susan, was executed on June 26 and returned to Sikyta for recording. The deeds, however, were not promptly recorded by Sikyta's office.

On October 27, 1997, Virginia executed and delivered a warranty deed to her son James D. Parkos, purporting to convey the same property that was the subject of the June 20 and 26 deeds. The October 27 deed was recorded with the Valley County register of deeds on October 29. Thereafter, Susan contacted the register of deeds regarding her loan application process and was informed that the only deed on file with respect to the subject property was the deed conveying the property from Virginia to James. Susan contacted Sikyta, who, on November 14, recorded the June 20 and 26 deeds.

## PROCEDURAL HISTORY

Susan filed a quiet title action in the district court against Virginia and James, alleging that both Virginia and James had been aware of the June 20, 1997, conveyance at the time that the October 27 deed was executed and that there was no consideration given at the execution of the October 27 deed. James denied the allegations and further alleged that the June 20 deed was never delivered, that the June 20 deed was given without consideration and was not intended to be a gift, and that Susan made misrepresentations to Virginia that induced Virginia to sign the June 20 deed.

James filed a motion for summary judgment which was overruled, and the case proceeded to trial. The primary witnesses to testify at trial were Sikyta, Carol, Susan, and James; Virginia neither appeared as a party nor testified. After trial, the district court determined that Virginia was competent when she executed the June 20, 1997, deed, that there was consideration given for the conveyance, and that the deed had been delivered to Sikyta, who was acting as an escrow agent. The district court further determined that James had knowledge of the June 20 deed prior to his receipt and recording of the October 27 deed. Consequently, the district court quieted title to the subject property in Susan. James appeals.

## ASSIGNMENTS OF ERROR

James assigns, as consolidated, restated, and reordered, that the district court erred in (1) finding that there was delivery of the June 20, 1997, deed prior to October 29; (2) finding that Sikyta was acting as an escrow agent, as opposed to acting as Virginia's attorney, on June 20 and while he retained the June 20 deed; (3) finding that there was no undue influence exerted on Virginia to sign the June 20 deed; and (4) finding that James had knowledge of the June 20 deed prior to his receipt of the October 27 deed.

■ James also assigns that the district court erred in finding that there was consideration for the June 20, 1997, deed. This assignment of error, however, was not argued in James' brief. Errors that are assigned but not argued will not be addressed by an appellate court. *Holmes v. Crossroads Joint Venture, ante* p. 98, 629 N.W.2d 511 (2001).

■ James also attempts to assign error to the district court's overruling of James' pretrial motion for summary judgment. The denial of a motion for summary judgment, however, is neither appealable nor reviewable. *McLain v. Ortmeier,* 259 Neb. 750, 612 N.W.2d 217 (2000); *Doe v. Zedek,* 255 Neb. 963, 587 N.W.2d 885 (1999). After trial, the merits should be judged in relation to the fully developed record, not whether a different judgment may have been warranted on the record at summary judgment. *Id.* Therefore, we do not consider this assignment of error.

## STANDARD OF REVIEW

■ A quiet title action sounds in equity. *Mueller v. Bohannon,* 256 Neb. 286, 589 N.W.2d 852 (1999). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Jeffrey Lake Dev. v. Central Neb. Pub. Power, ante* p. 515, 633 N.W.2d 102 (2001).

## ANALYSIS

### DELIVERY OF JUNE 20 DEED

■ James first assigns that the district court erred in determining that there had been delivery of the June 20, 1997, deed. It is essential to the validity of a deed that there be a delivery, and the burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

■ To constitute a valid delivery of a deed, there must be an intent on the part of the grantor that the deed shall operate as a muniment of title to take effect presently. *Id.* The essential fact to render delivery effective is always that the deed itself has left the control of the grantor, who has reserved no right to recall it, and it has passed to the grantee. *Id.* No particular acts or words are necessary to constitute delivery of a deed; anything done by the grantor from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient. *Id.* Whether a deed or other instrument conveying an interest in property has been delivered is largely a question of intent to be determined by the facts and circumstances of the particular case. *Id.*

The essential question, then, is whether Virginia, at the June 20, 1997, meeting with Carol, Susan, and Sikyta, intended her execution of the deed and presentation of the deed to Sikyta for recording to presently transfer title of the property. The evidence presented at trial supports the district court's conclusion that Virginia did intend to transfer title on June 20.

Sikyta testified that he discussed the transaction at length with Virginia and that Virginia indicated that she intended to transfer the property so that Carol could obtain needed surgery. Sikyta further testified that the deed was given to him without restrictions and that everyone at the meeting, including Virginia, told him to take the deed and record it. Sikyta testified that he was not instructed to retain the deed for any reason. Carol and Susan's testimony corroborated Sikyta's account of the June 20, 1997, meeting.

■ Furthermore, Sikyta testified regarding a telephone call on December 3, 1997, in which he spoke to Virginia. Sikyta testified that Virginia told Sikyta that she had wanted to convey the

property on June 20, but that she had since changed her mind and wanted James to have it. Sikyta testified that in a conversation with Virginia in February 1998, Virginia again stated that she had intended to convey the property on June 20, 1997, but later had reservations. However, where a grantor has conveyed his or her property, he or she cannot subsequently, by withdrawing or destroying the deed, or by other acts indicating a subsequent change of intention, affect the transaction thus completed. See *In re Estate of Saathoff*, 206 Neb. 793, 295 N.W.2d 290 (1980).

This court addressed a similar situation in *In re Estate of Saathoff, supra.* In that case, the grantor, upset over the death of one of her sons, decided to transfer part of her interest in the decedent's estate to her other son. The grantor directed the decedent's attorney to prepare an assignment of the grantor's interest in the decedent's estate. The assignment was prepared and signed, and the grantor gave the assignment to the attorney's secretary. Later, after the grantor spoke with her daughter, the grantor changed her mind. This court determined, however, that when the grantor executed the assignment, it was delivered to the attorney's secretary with the intent that it be delivered to the grantee and with the further intent that the grantor have nothing more to do with the assignment; thus, this court determined that the delivery was valid and affirmed the trial court's ruling to that effect. *Id.*

Similarly, in the instant case, the delivery of the deed to Sikyta rather than to Carol or Susan does not defeat the delivery, as the evidence indicated that the deed was presented to Sikyta for the specific purpose of having the deed recorded. The vital inquiry is whether the grantor intended a complete transfer—whether the grantor parted with dominion over the instrument with the intention of relinquishing all dominion over it and making it presently operative as a conveyance of title to the land. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994). Given the undisputed testimony that Sikyta was instructed, at the June 20, 1997, meeting, to take the deed and have it recorded, we conclude, on our de novo review, that Susan met her burden of proving by a preponderance of the evidence that the June 20 deed was validly delivered. See *id.*

James contends that the delivery was not effective because it was conditional on the payment, by Carol and Susan,

of Sikyta's legal fees for the transaction. The delivery by the grantor of a deed to a third person to hold until the happening of a contingency does not operate as a delivery. *Action Realty Co., Inc. v. Miller*, 191 Neb. 381, 215 N.W.2d 629 (1974). The evidence does indicate that Virginia insisted that Carol and Susan were to pay the legal and filing fees, and a letter from Sikyta to Carol regarding the fees may have implied that both deeds were being held pending payment of those fees.

However, Sikyta testified at the trial that the implication of that letter was a mistake and that retention of the deeds until the fees were paid was not part of the agreement with Virginia, Carol, and Susan. Sikyta testified that the sole reason for the delay in filing the deeds was a clerical error in his office and that he was not instructed to hold the deeds for any reason. Furthermore, the intent of the grantor is the controlling factor, and there is no indication in the record that Virginia intended for the conveyance of the land to be conditional or that Virginia, on June 20, 1997, intended anything other than that the conveyance be immediately effective. James' first assignment of error is without merit.

James' second assignment of error also relates to the delivery of the June 20, 1997, deed. James contends that the delivery was ineffective because Sikyta was Virginia's attorney and thus Virginia's agent, not an "escrow agent" as found by the district court. James argues that Sikyta was incapable of acting as an escrow agent because he was counsel to one of the parties and, thus, could not act as a third party. See *Baye v. Airlite Plastics Co.*, 260 Neb. 385, 618 N.W.2d 145 (2000).

However, Sikyta testified that he considered himself to be acting as an agent of Carol and Susan for the limited purpose of filing the deed and thus an "escrow agent" for filing purposes. There is support in our law for an attorney of one party to a transaction being able to act as an escrow agent for that transaction. See *Pike v. Triska*, 165 Neb. 104, 84 N.W.2d 311 (1957). In any event, the issue here is not propriety, but the intent of the grantor. There is no indication in the record that the deed was given to Sikyta in order to permit Virginia to retain control over the deed, and in fact substantial evidence exists to the contrary. As such, we find James' argument, and his second assignment of error, to be without merit.

UNDUE INFLUENCE

 James argues that the June 20, 1997, deed should be set aside as the result of undue influence on the part of Carol and Susan. The burden is on the party alleging the execution of a deed was the result of undue influence to prove such undue influence by clear and convincing evidence. *Bishop v. Hotovy,* 222 Neb. 623, 385 N.W.2d 901 (1986). See, also, *Cotton v. Ostroski,* 250 Neb. 911, 554 N.W.2d 130 (1996); *Goff v. Weeks,* 246 Neb. 163, 517 N.W.2d 387 (1994). The elements necessary to be established to warrant the rejection of a written instrument on the ground of undue influence are (1) that the person who executed the instrument was subject to undue influence, (2) that there was opportunity to exercise undue influence, (3) that there was a disposition to exercise undue influence for an improper purpose, and (4) that the result was clearly the effect of such undue influence. *Miller v. Westwood,* 238 Neb. 896, 472 N.W.2d 903 (1991); *Bishop, supra; Craig v. Kile,* 213 Neb. 340, 329 N.W.2d 340 (1983).

In this regard, the testimony of Sikyta regarding the June 20, 1997, meeting is particularly illuminating and representative of the entire record:

> [O]ne of the first responses I had was I had asked [Virginia] if she understood, in transferring this land, that she would be giving up the full use of it and she responded yes. I asked her if she understood that when this land went out of her possession that meant she would no longer have the income off of it. She stated yes. I asked her if she was sure she wanted to transfer it to the girls. Her first response was I think so or something to that effect. And so I persisted about what do you mean by you think so. Well, yes, I do. And, you know, there was several exchanges of that nature. I told her that I think so was not good enough. That I needed to know if she really intended to transfer and she said yes. I asked her if anyone was putting her under any pressure to do that. She said no. I asked her if there was a reason why she wanted to transfer it and she said, yes, it was the only way that Carol could have her surgery, so she wanted to do it for Carol's benefit. There was several other questions of that nature, but generally that's the line it took.

█ James' argument is that Carol and Susan misled Virginia regarding their motives for proposing the conveyances. However, James presented no evidence that directly supports this argument. Moreover, the record simply would not support a finding that Virginia was mentally incapacitated or otherwise susceptible to undue influence at the time she executed the June 20, 1997, deed. Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; instead, there must be a solid foundation of established facts on which to rest the inference of its existence. See, *Westwood, supra*; *Craig, supra*. Our de novo review of the record reveals no such foundation.

█ The court, in examining the matter of whether a deed was procured by undue influence, is not concerned with the rightness of the conveyance but only with whether it was the voluntary act of the grantor. *Westwood, supra*; *Bishop, supra*; *Craig, supra*. While the record is clear that Carol and Susan proposed the conveyance and persuaded Virginia to agree to the conveyance, it is not mere influence that makes a conveyance unlawful, but undue influence as established in the law. See, *Westwood, supra*; *Craig, supra*. Although there is evidence that Virginia wavered on her decision months after the transaction, there is simply no clear and convincing evidence that Virginia was subject to undue influence on or around June 20, 1997, the date of the conveyance of the deed. James' third assignment of error is without merit.

## NOTICE TO JAMES OF JUNE 20 DEED

James' final assignment of error is that the district court erred in determining that James had notice of the June 20, 1997, deed prior to his receipt and recording of the October 27 deed. James argues that he is a subsequent purchaser in good faith without notice entitled to the protection of Neb. Rev. Stat. § 76-238 (Reissue 1996), which provides:

> All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without

notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded; *Provided*, that such deeds, mortgages and other instruments shall be valid between the parties.

(Emphasis in original.)

 A good faith purchaser of land is one who purchases for valuable consideration without notice of any suspicious circumstances which would put a prudent person on inquiry. *How v. Baker*, 223 Neb. 100, 388 N.W.2d 462 (1986); *Mader v. Kallos*, 219 Neb. 579, 365 N.W.2d 408 (1985). See, also, *Winberg v. Cimfel*, 248 Neb. 71, 532 N.W.2d 35 (1995). The burden of proof is upon a litigant who alleges that he or she is a good faith purchaser to prove that he or she purchased the property for value and without notice. *How, supra*; *Mader, supra*. This burden includes proving that the litigant was without notice, actual or constructive, of another's rights or interest in the land. *Mader, supra*.

James testified that he prepared the October 27, 1997, deed and related documents himself, without counsel. James claimed that the October 27 deed was part of a transaction in which he was given title to several of Virginia's real properties in exchange for taking care of Virginia on a daily basis. Leaving aside the question whether James' care was "valuable consideration" for the conveyances, see *id.*, the record is replete with evidence that James had actual notice of the June 20 deed prior to receiving and recording the October 27 deed.

Carol, Susan, and James all testified regarding a "family meeting" that was held in May 1997, which included Virginia and her children Carol, Susan, James, and Tammy Parkos, as well as Tammy's husband. Carol, Susan, and James all agreed that the subject of the meeting was the proposed conveyance that is the subject of this dispute and that Carol and Susan were in favor of the transaction, while James and Tammy opposed it. James' account differs from that of Carol and Susan with respect to Virginia's participation in the meeting. Carol and Susan each testified that at the family meeting, Virginia decided that she wanted to convey the property to Carol and Susan. James

claimed that at the family meeting, Virginia opposed the conveyance to Carol and Susan, but James acknowledged that he had not mentioned this fact in his prior deposition. Nonetheless, James' own testimony regarding this meeting could be held to reveal a notice of suspicious circumstances which would put a prudent person on inquiry regarding the subsequent transaction. See, *Winberg, supra*; *How, supra*; *Mader, supra*.

Beyond that, however, several witnesses testified to conversations with James after June 20, 1997, in which James indicated his awareness of the June 20 conveyance. Sikyta testified regarding a telephone conversation on December 3 in which James admitted that James had known about the June 20 deed prior to recording the October 27 deed. Sikyta testified that in a later meeting, in February 1998, James changed his story and claimed that while he had known in October 1997 of the plan to convey the property to Carol and Susan, he did not know that it had actually been accomplished. Even if the latter conversation reflected James' actual knowledge, however, that would still constitute sufficient notice to place him on inquiry regarding the June 20 transaction. See *id.*

Moreover, Carol testified to a conversation with James in August 1997 in which James allegedly told Carol to "give back" the subject property. Susan testified that she had spoken to James on July 7 and that James had congratulated her on obtaining the property and asked if he could borrow money off the remaining credit for the property. Susan also testified regarding another conversation with James in mid-August, in which James said that Virginia could not afford nursing home care because "you girls have her income, her farm." Susan further testified that James again acknowledged his awareness of the conveyance in a conversation on August 28.

In James' testimony, he asserted simply that he did not know about the June 20, 1997, deed when he received and recorded the October 27 deed. James did not deny the conversations testified to by Sikyta, Carol, and Susan; instead, James merely denied any recollection of any of those conversations.

The overwhelming weight of the evidence supports the district court's conclusion that James was aware of the June 20, 1997, deed prior to the October 27 conveyance. The district

court, which had the opportunity to hear and observe the witnesses, did not accept James' version of the facts, and we consider and give weight to this in our de novo review. See *Jeffrey Lake Dev. v. Central Neb. Pub. Power, ante* p. 515, 633 N.W.2d 102 (2001). After reviewing the record, we conclude, as did the district court, that James did not sustain his burden of proving he was a subsequent purchaser in good faith without notice with respect to the October 27 conveyance. James' final assignment of error is without merit.

## CONCLUSION

Susan met her burden of showing a valid delivery of the June 20, 1997, deed, and James did not meet his burden of showing that the June 20 deed was the result of undue influence or that he was a subsequent purchaser in good faith without notice. Thus, title to the subject property passed from Virginia on June 20, and the October 27 deed purporting to convey the same property is a nullity. James' assignments of error having no merit, we affirm the judgment of the district court quieting title to the subject property in Susan.

AFFIRMED.