Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/14/2018 09:08 AM CDT

Susan J. Bayliss, Personal Representative of the Estate
of Ruth E. Clason, deceased, appellee, v. Steven E.
Clason, Personal Representative of the Estate of
F.W. Eugene Clason, deceased, appellant, and
David W. Pederson, Special Fiduciary of the
Clason Living Trust Dated March 31,
2008, and Any Amendments
Thereto, et al., appellees.

___ N.W.2d ___

Filed August 14, 2018.    No. A-17-270.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does
not involve a factual dispute is determined by an appellate court as a
matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary
judgment, an appellate court views the evidence in a light most favor-
able to the party against whom the judgment is granted and gives
such party the benefit of all reasonable inferences deducible from
the evidence.
3. **Judgments: Pleadings: Appeal and Error.** A motion to alter or amend
a judgment is addressed to the discretion of the trial court, whose deci-
sion will be upheld in the absence of an abuse of that discretion.
4. **Judgments: Words and Phrases.** A judicial abuse of discretion
requires that the reasons or rulings of the trial court be clearly unten-
able insofar as they unfairly deprive a litigant of a substantial right and
a just result.
5. **Jurisdiction: Parties: Waiver.** The absence of an indispensable party to
a controversy deprives the court of subject matter jurisdiction to deter-
mine the controversy and cannot be waived.
6. **Jurisdiction: Appeal and Error.** When a lower court lacks the power,
that is, the subject matter jurisdiction, to adjudicate the merits of a
claim, issue, or question, an appellate court also lacks the power to

determine the merits of the claim, issue, or question presented to the lower court.

7. **Parties: Equity: Appeal and Error.** When it appears that all indispensable parties to a proper and complete determination of an equity cause were not before the district court, an appellate court will remand the cause for the purpose of having such parties brought in.

8. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.

9. **Parties: Words and Phrases.** Necessary parties are parties who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence.

10. **Declaratory Judgments: Courts: Jurisdiction: Parties: Waiver.** The presence of necessary parties in declaratory judgment actions is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy.

11. **Parties: Words and Phrases.** An indispensable party to a suit is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

12. **Jurisdiction: Service of Process: Waiver.** Participation in the proceedings on any issue other than the defenses of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process, waives all such issues except as to the objection that the party is not amenable to process issued by a court of this state.

13. **Service of Process: Waiver.** A general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof.

14. **Jurisdiction: Pleadings: Parties.** A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party.

15. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

16. **Summary Judgment: Proof.** A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law.

17. **Summary Judgment: Evidence.** When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy.

18. **Trial: Evidence.** Where reasonable minds could draw different conclusions from the facts presented, such presents a triable issue of material fact.

19. **Deeds: Proof.** It is essential to the validity of a deed that there be a delivery, and the burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence.

20. **Deeds: Intent.** To constitute a valid delivery of a deed, there must be an intent on the part of the grantor that the deed shall operate as a muniment of title to take effect presently.

21. **Deeds.** The essential fact to render delivery effective is always that the deed itself has left the control of the grantor, who has reserved no right to recall it, and it has passed to the grantee.

22. **Deeds: Intent.** Whether a deed or other instrument conveying an interest in property has been delivered is largely a question of intent to be determined by the facts and circumstances of the particular case.

23. **Deeds.** Recordation of a deed generally presumes delivery.

24. **Deeds: Intent.** Whether or not a deed has been delivered is a mixed question of law and fact. The element which controls the resolution of that question is the intention of the parties, especially the intention of the grantor. The vital inquiry is whether the grantor intended a complete transfer—whether the grantor parted with dominion over the instrument with the intention of relinquishing all dominion over it and of making it presently operative as a conveyance of the title to the land.

25. ____: ____. It is not necessary, to effectuate delivery, that a deed actually be handed over to the grantee or to another person for the grantee. There may be a delivery notwithstanding that the deed remains in the custody of the grantor. If a valid delivery takes place, it is not rendered ineffectual by the act of the grantee in giving the deed into the custody of the grantor for safekeeping. It is all a question of the intention of the parties, which may be manifested by words or acts or both.

26. ____: ____. If a deed, although acknowledged, is not recorded and is in the grantor's possession at the time of his death, those circumstances,

unless explained, are deemed conclusive that the parties did not intend a complete transfer.

27. **Deeds: Presumptions.** There is a presumption of nondelivery if the evidence shows that a deed was in the grantor's possession at the time of his death and was not then recorded. Such a showing places upon the grantees the burden of going forward with the evidence, more accurately, the burden of persuasion, to rebut the presumption of nondelivery.

28. **Deeds: Intent: Proof.** The burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence, and to constitute a valid delivery of a deed there must be an intent on the part of the grantor that the deed shall operate as evidence of title to take effect presently.

29. **Deeds: Presumptions: Proof.** When a deed is found in the grantee's possession during the lifetime of the grantor, this is prima facie evidence of delivery, and the burden of proof is upon the one who disputes this presumption.

30. **Deeds.** Where the same individual is both a deed's grantor and its sole grantee, no justifiable inference regarding the effectiveness of delivery may be drawn merely from that individual's continuous possession and control of the deed.

31. **Trusts: Intent.** When there are two or more instruments relating to a trust, they should be construed together to carry out the settlor's intent.

32. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

33. **Summary Judgment.** At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. It does not resolve the factual issues.

34. **Summary Judgment: Motions for New Trial.** A motion for new trial following the entry of summary judgment is not a proper motion.

35. **Pleadings: Judgments: Appeal and Error.** An appellate court reviews a postjudgment motion based on the relief it seeks, rather than its title.

36. **Pleadings: Judgments.** Under Neb. Rev. Stat. § 25-1329 (Reissue 2016), if a postjudgment motion seeks a substantive alteration of the judgment—as opposed to the correction of clerical errors or relief wholly collateral to the judgment—a court may treat the motion as one to alter or amend the judgment.

37. **Pleadings: Judgments: Time.** In order to qualify for treatment as a motion to alter or amend a judgment, the motion must be filed no later than 10 days after the entry of judgment, as required under Neb. Rev. Stat. § 25-1329 (Reissue 2016), and must seek substantive alteration of the judgment.

38. **Pleadings: Judgments: Time: Appeal and Error.** In cases involving a motion to alter or amend the judgment, a critical factor is whether the motion was filed within 10 days of the final order, because a timely motion tolls the time for filing a notice of appeal.

39. **Pleadings: Judgments.** Under Neb. Rev. Stat. § 25-1329 (Reissue 2016), a motion for reconsideration is the functional equivalent of a motion to alter or amend a judgment.

40. **Judgments: Appeal and Error.** A correct result will not be set aside even when the lower court applied the wrong reasoning in reaching that result.

Appeal from the District Court for Furnas County: David W. Urbom, Judge. Affirmed.

Siegfried H. Brauer, of Brauer Law Office, for appellant.

David W. Rowe, of Kinsey, Rowe, Becker & Kistler, L.L.P., for appellee Susan J. Bayliss.

Roger L. Benjamin, P.C., for appellees Jim L. Clason and Lee A. Clason.

Damien J. Wright, of Welch Law Firm, P.C., for appellees Deshane Nelson et al.

Moore, Chief Judge, and Riedmann and Arterburn, Judges.

Moore, Chief Judge.

### INTRODUCTION

Steven E. Clason, personal representative of the estate of F.W. Eugene Clason (Eugene), deceased, appeals from the order of the district court for Furnas County, which granted summary judgment in favor of Susan J. Bayliss (Susan), personal representative of the estate of Ruth E. Clason, deceased. For the reasons that follow, we affirm.

### BACKGROUND

Eugene and Ruth are the parents of eight adult children, including Susan, Steven, Jim L. Clason, Lee A. Clason, and

Bonnie S. Wright. These five children are the beneficiaries of the Clason Living Trust created by Eugene and Ruth in 2008 (the 2008 Trust); Eugene and Ruth's other three children were specifically disinherited under the terms of the 2008 Trust. A second trust was created by Ruth in 2011 after Eugene's death, which trust was entitled the "Ruth E. Clason Living Trust" (the 2011 Trust). The beneficiaries of the 2011 Trust are the five children identified above, plus, per stirpes, the children of the three disinherited children. The present appeal involves a dispute over whether certain quitclaim deeds signed by Eugene and Ruth in 2008, but not recorded until 2013 after the death of both Eugene and Ruth, were delivered and became part of the 2008 Trust or are void, thus making the real estate part of Ruth's estate and subject to the terms of the 2011 Trust.

Before their deaths, Eugene and Ruth retained attorney Allen Daubman to develop an estate plan for them. On March 31, 2008, Eugene and Ruth executed the trust agreement for the 2008 Trust. Eugene and Ruth were named in the trust agreement as the initial trustees, with Steven and Susan named as successor cotrustees. As noted previously, the five children identified above were named as trust beneficiaries, and among other things, the 2008 Trust provided for specific distributions of real estate to these five children. The 2008 Trust provided that the three disinherited children "and the descendants of each of them" were "specifically and intentionally exclude[d]" from "receiving any part of the Trust Estate." In terms of "Initial Trust Property," the 2008 Trust provided: "We will assign, convey, transfer and deliver to the Trustee certain property to be made part of the Trust Estate. The Trustee agrees to hold, manage, and distribute the Trust Estate under the provisions set forth in this Trust Agreement." Also on March 31, Eugene and Ruth signed 14 quitclaim deeds governing certain real property owned by them (five from Ruth as grantor to Eugene and Ruth, husband and wife, as grantees; one from Eugene as grantor to Eugene and Ruth, husband and wife,

as grantees; and eight from Eugene and Ruth, husband and wife, as grantors to Eugene and Ruth, trustees of the 2008 Trust, as grantees). Daubman specifically informed Eugene and Ruth that to fund the 2008 Trust, the deeds would need to be recorded.

On July 28, 2008, Eugene and Ruth, as husband and wife, individually executed a "Nebraska Deed of Trust" pledging the real estate as collateral for a loan.

Eugene died on May 16, 2010. After Eugene's death, Ruth retained Daubman to represent her as the personal representative of Eugene's estate. She later retained attorney Ward Urbom to replace Daubman when he withdrew, and subsequently, she retained attorney Jerrod Gregg to replace Urbom.

On September 24, 2010, Ruth executed an amendment to the 2008 Trust, appointing Lee to serve as her cotrustee and further appointing Susan as cotrustee with Lee if he was unwilling to serve as sole trustee. In a separate proceeding from the present declaratory judgment, the district court determined that the amendment was not the result of undue influence by Susan and/or Lee.

On July 13, 2011, Ruth signed documents to execute a will and the 2011 Trust. The 2011 Trust documents prepared by Gregg were intended to, but did not, recreate the terms of the 2008 Trust. Although Gregg testified about various provisions of the 2011 Trust in his deposition, a copy of the 2011 Trust is not in the record on appeal.

Ruth entered into a written crop share lease with Lee as the tenant on March 13, 2012. The lease was executed by Ruth, as the personal representative of Eugene's estate, and Ruth, an individual, as lessor. The lease was for real property at issue in this appeal.

Ruth died on January 12, 2013. On the date of her death, she was the record owner of 17 tracts of land (corresponding to the land represented in the 14 original quitclaim deeds). Eugene and Ruth personally paid the 2008 through 2011 real estate taxes on this property. Ruth reported all income and deducted

all expenses generated by this property on her individual income tax returns for 2010, 2011, and 2012.

Steven recorded the quitclaim deeds with the Furnas County register of deeds on May 17, 2013.

On May 26, 2015, Susan, as the personal representative of Ruth's estate, filed a complaint for declaratory judgment in the district court, naming various interested parties, including Steven both individually and as the personal representative of Eugene's estate, as defendants. In the body of the complaint, Susan described Steven in his capacity both as the "duly appointed" personal representative of Eugene's estate and as an interested party by virtue of his "possible status as a beneficiary of the 2008 Trust and the 2011 Trust." Susan alleged that on the date of Ruth's death, Ruth was the record owner of (or owned a one-half interest in) certain tracts of real property; that the 2008 Trust claimed title to this real property, adverse to Susan as the personal representative, based on the 14 quitclaim deeds dated March 31, 2008, and recorded on May 17, 2013; that the 2008 Trust had no interest in the land; that Eugene and Ruth had never authorized the recording of the 14 quitclaim deeds; and that such recording, if "left outstanding," would "totally deprive [Susan as the personal representative] of one-half ownership of said property." Susan sought a declaration that the 14 quitclaim deeds recorded on May 17, 2013, were not valid transfers of an interest in the real estate and asked the court to void the deeds.

On May 26, 2015, Susan, as the personal representative of Ruth's estate, filed a praecipe requesting that the clerk of the district court issue a summons for Steven both personally and in his capacity as the personal representative of Eugene's estate for personal service of the complaint by the Furnas County sheriff upon Steven at his residence. The clerk issued a summons on May 26 directed to "Steven Clason PR Est Eugene Clason." On June 1, the sheriff filed a return of service showing that the complaint and summons were personally handed to Steven at his residence.

On June 26, 2015, Steven, as the personal representative of Eugene's estate, filed a motion to dismiss the complaint, alleging that it failed to state a claim upon which relief could be granted, that it failed to join one or more necessary parties, and that Susan did not have standing to bring the claim. The bill of exceptions in this case does not include a transcription of the hearing held on Steven's motion, and a notation from the court reporter indicates that no record was made of the hearing held on July 29. On August 12, the district court entered an order, denying Steven's motion, but finding that Susan in her individual capacity was a necessary party. The court granted Susan as the personal representative 10 days to amend the complaint and granted an additional 10 days thereafter for all of the defendants to answer or plead if they had not already filed an answer.

On August 14, 2015, Susan, as the personal representative of Ruth's estate, filed an amended complaint, adding herself in her individual capacity as a defendant. As before, she named Steven as a defendant both in his capacity as the personal representative of Eugene's estate and in his individual capacity and described him in the body of the complaint as the appointed personal representative of Eugene's estate and as an interested party by virtue of being a possible beneficiary of the two trusts. The certificate of service for the amended complaint indicates that a copy was provided electronically to Steven, both individually and as the personal representative, to his attorney at the attorney's email address.

On August 17, 2015, Susan, as the personal representative of Ruth's estate, filed a praecipe asking the clerk of the district court to issue an "alias summons" for "Defendant, **Steven E. Clason, personally**" for personal service by the sheriff upon Steven at his residence. The clerk issued the second summons on August 18, which was again directed to "Steven Clason PR Est Eugene Clason." The sheriff filed a return of service on August 25, showing that the amended complaint and summons were personally handed to Steven at his residence.

On January 5, 2016, Susan, as the personal representative of Ruth's estate, filed a motion for summary judgment. She asserted that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law and asked the court to "declare that the Qui[t] Claim Deeds filed by and between F.W. Eugene Clason, Ruth E. Clason, F.W. Eugene Clason and Ruth E. Clason as co-trustees of the 2008 [T]rust on May 17, 2013, are void." The certificate of service for the summary judgment motion indicates that a copy was provided electronically to Steven, both individually and as the personal representative, to his attorney at the attorney's email address.

On January 22, 2016, Steven, as the personal representative of Eugene's estate, filed a pleading entitled "Objection to Hearing on Plaintiff's Motion for Summary Judgment," alleging that "not all Defendants have been served with summons and granted an opportunity to respond to the Amended Complaint."

Steven, in his individual capacity, filed a suggestion of bankruptcy with the district court on January 27, 2016, and an amended suggestion of bankruptcy on February 1.

On August 16, 2016, Steven, as the personal representative of Eugene's estate, filed a motion to continue the hearing on the summary judgment motion. He alleged that Susan, as the personal representative of Ruth's estate, had failed to summon all necessary parties, specifically, Steven, individually, and Lee and Susan as trustees of the 2008 Trust. Following a hearing, the district court denied Steven's motion to continue. The bill of exceptions on appeal does not include a transcription of the hearing on the motion to continue, and a notation from the court reporter indicates that a record was not made of that hearing. We note that Susan filed a voluntary appearance in her capacity as a cotrustee of both trusts prior to the summary judgment hearing and that Lee filed an answer to both the complaint and the amended complaint seeking affirmative relief. Lee also filed an answer to the amended complaint in

his capacity as cotrustee of the 2008 Trust and as a copersonal representative of Ruth's estate.

A hearing on the motion for summary judgment was held on August 25, 2016. At the start of the hearing, the district court noted that Steven's bankruptcy stay was resolved effective August 1 and that Steven was present in both his fiduciary capacity and his individual capacity. The following exchange occurred between the court and the attorney for Steven as the personal representative:

> [ATTORNEY]: . . . I want to make sure the record is clear on that that is not the case because we do not accept the fact that . . . Steven . . . , as an individual, has had summons issued against him or served. My representation here today is as appearing for [Steven] as Personal Representative of [Eugene's estate].
>
> THE COURT: Okay. Steven . . . , Personal Representative of [Eugene's estate,] is represented by [the attorney]. The Defendant, Steven . . . , is present in person, pro se.
>
> [ATTORNEY]: He is not present in person, he's present as [the personal representative].
>
> THE COURT: I see him. He's here in person. The record will reflect that . . . Steven . . . is present in person.

The attorney for Steven, as the personal representative of Eugene's estate, made an oral motion for recusal, which the district court denied. The court asked Steven if he had anything he wanted to say in response to the motion, but Steven declined, stating, "No. I mean since I've not had legal notice I don't want to say — thank you." The court then received various depositions, affidavits, and other documentary evidence offered by the parties in connection with the summary judgment motion. The attorney for Steven, as the personal representative of Eugene's estate, offered certain evidence in opposition to the summary judgment motion, but Steven in his individual capacity did not offer any evidence, nor did the court ask him whether he wished to do so.

In addition to the information we have already set forth above about the deeds and the formation of the two trusts, there was evidence received at the summary judgment hearing about the location of the deeds and 2008 Trust documents between March 31, 2008, when they were signed by Eugene and Ruth and May 17, 2013, when they were recorded by Steven, although the record is not particularly revealing on this point.

In his deposition, Daubman testified that he may have kept the original quitclaim deeds after they were signed by Eugene and Ruth, but he was not certain. If he kept them, he was not certain for how long, and he had no recollection "either way" of conveying them or transferring them to anyone at any time. Daubman had no memory of being asked by Eugene and Ruth to hold the deeds so that Daubman could record them. Nor did he recall any specific request from them to hold the deeds because they were not ready to fund the trust. He did not have any recollection of either of them making an expression that they were not ready to fund the trust, and he had only a vague recollection that they were giving some consideration to "maybe making some changes to who got what land."

Gregg testified that at some point after he was retained by Ruth, he received from Urbom a binder containing the 2008 Trust agreement, Eugene's will, and the original quitclaim deeds. Elsewhere in his deposition, he testified that the "2008 tax plan documents" were delivered to his office by Susan or "some family member," but he did not recall when they were delivered or by whom, although he clearly stated they were not delivered prior to July 13, 2011. Gregg testified that he did not see the quitclaim deeds until after Ruth's death. He also indicated that Ruth did not "express the existence of those deeds" to him prior to her death.

In his deposition, Steven stated that after Ruth's death, he personally retrieved the original 14 quitclaim deeds from Gregg's office.

On December 8, 2016, the district court entered an order, granting Susan's motion for summary judgment. The court found it undisputed that Eugene and Ruth signed the quitclaim deeds on March 31, 2008, and that Steven recorded them on May 17, 2013. The court stated that the burden of proof of delivery shifts to Steven to prove by a preponderance of the evidence that Eugene and Ruth intended to convey title to the real property to the 2008 Trust. The court found that Steven presented no evidence to prove delivery of the quitclaim deeds by Eugene and Ruth. Accordingly, the court found that there was no delivery of the deeds by Eugene and Ruth. The court granted Susan's motion for summary judgment and ordered that the 14 quitclaim deeds dated March 31, 2008, and recorded on May 17, 2013, are void.

On December 15, 2016, Steven, as the personal representative of Eugene's estate, filed a "Motion for New Trial or for Order Vacating Judgment." The district court denied Steven's motion on February 17, 2017.

## ASSIGNMENTS OF ERROR

Steven asserts, consolidated and restated, that the district court erred in (1) failing to dismiss for lack of an indispensable party, (2) granting summary judgment, and (3) denying his motion to vacate.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[3,4] A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *McCullough v. McCullough, supra*.

## ANALYSIS

*Indispensable Party.*

Steven asserts that the district court erred in failing to dismiss for lack of an indispensable party. He argues that he was never summoned into the case in his individual capacity and that he was an indispensable party given the differing sets of beneficiaries defined in the 2008 Trust and the 2011 Trust and the effect on the beneficiaries of the 2008 Trust of voiding the quitclaim deeds.

[5-8] Neb. Rev. Stat. § 25-323 (Reissue 2016) provides in part:

> The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

The absence of an indispensable party to a controversy deprives the court of subject matter jurisdiction to determine the controversy and cannot be waived. *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017). When a lower court lacks the power, that is, the subject matter jurisdiction, to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *Id.* When it appears that all indispensable parties to a proper and complete determination of an equity cause were not before the district court,

an appellate court will remand the cause for the purpose of having such parties brought in. *Id.* An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018).

[9-11] Necessary parties are parties who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence. *Midwest Renewable Energy v. American Engr. Testing, supra.* The presence of necessary parties in declaratory judgment actions is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy. *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014). An indispensable party to a suit is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Midwest Renewable Energy v. American Engr. Testing, supra.*

Clearly, Steven has an interest in this case both in his capacity as the personal representative of Eugene's estate and in his individual capacity by virtue of being a potential beneficiary of both trusts, and he was named as a defendant in both capacities and identified as such in both the complaint and the amended complaint. The question becomes whether Steven was properly served in both capacities. The record shows that both summonses issued by the clerk of the court were directed to "Steven Clason PR Est Eugene Clason." Steven does not dispute that he was served in his capacity as the personal representative, only arguing that he was not served in his individual capacity.

Neb. Rev. Stat. § 25-508.01(1) (Reissue 2016) provides that an individual party "may be served by personal, residence, certified mail, or designated delivery service." "Personal service . . . shall be made by leaving the summons with the individual to be served," and "[r]esidence service . . . shall be made by leaving the summons at the usual place of residence of the individual to be served, with some person of suitable age and discretion residing therein." Neb. Rev. Stat. § 25-505.01(1) (Reissue 2016). Neb. Rev. Stat. § 25-506.01(1) (Reissue 2016) provides that "[u]nless the plaintiff has elected certified mail service or designated delivery service, the summons shall be served by the sheriff of the county where service is made . . . ."

Here, the returns of service filed by the sheriff show that the summonses, complaint, and amended complaint were personally handed to Steven at his home address in compliance with the above statutory requirements. Regardless of whether the reference to Steven in the summons is only in his capacity as the personal representative of Eugene's estate and not in his individual capacity, he has made a general appearance, thereby waiving any such defect.

[12-14] Participation in the proceedings on any issue other than the defenses of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process, waives all such issues except as to the objection that the party is not amenable to process issued by a court of this state. *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016). A general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof. *Id.* A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party. *Id.* See Neb. Rev. Stat. § 25-516.01(2) (Reissue 2016).

Susan argues that by filing the suggestion in bankruptcy and the amended suggestion in bankruptcy, Steven made a

general appearance. We agree. Neb. Ct. R. § 6-1506 (rev. 2008) states:

> Upon the filing of the Suggestion of Bankruptcy . . . , no further action will be taken in the case by the court or by the parties until it can be shown to the satisfaction of the court that the automatic stay imposed by 11 U.S.C. § 362 does not apply or that the automatic stay has been terminated, annulled, modified, or conditioned so as to allow the case to proceed.

By filing the stay, Steven asked the court to bring its powers into action on a matter other than the question of jurisdiction, thus making a general appearance and waiving any defects in the service of process. See, also, *Ohio Nat. Life Ins. Co. v. Baxter*, 139 Neb. 648, 298 N.W. 530 (1941) (filing by mortgagor of request for stay of order of sale under foreclosure decree was general appearance by mortgagor in action and constituted waiver of all errors prior to filing of request); *Franse v. Armbuster*, 28 Neb. 467, 44 N.W. 481 (1890) (mortgagor, by availing himself of stay taken in his name by his brother, thereby appeared in action).

Steven's assignment of error is without merit.

*Summary Judgment.*

[15-18] Steven asserts that the district court erred in granting summary judgment. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Id.* If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a

matter of law. *Id.* When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy. *Id.* Where reasonable minds could draw different conclusions from the facts presented, such presents a triable issue of material fact. *Id.*

[19-22] In granting summary judgment, the district court considered Susan's argument that the quitclaim deeds at issue were not delivered and therefore not valid. It is essential to the validity of a deed that there be a delivery, and the burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence. *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002). To constitute a valid delivery of a deed, there must be an intent on the part of the grantor that the deed shall operate as a muniment of title to take effect presently. *Id.* The essential fact to render delivery effective is always that the deed itself has left the control of the grantor, who has reserved no right to recall it, and it has passed to the grantee. *Id.* Whether a deed or other instrument conveying an interest in property has been delivered is largely a question of intent to be determined by the facts and circumstances of the particular case. *Id.*

[23,24] Recordation of a deed generally presumes delivery. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994). Whether or not a deed has been delivered is a mixed question of law and fact. *Id.* The element which controls the resolution of that question is the intention of the parties, especially the intention of the grantor. *Id.* The vital inquiry is whether the grantor intended a complete transfer—whether the grantor parted with dominion over the instrument with the intention of relinquishing all dominion over it and of making it presently operative as a conveyance of the title to the land. *Id.*

[25] It is not necessary, to effectuate delivery, that a deed actually be handed over to the grantee or to another person for the grantee. *Id.* There may be a delivery notwithstanding that the deed remains in the custody of the grantor. *Id.* If a

valid delivery takes place, it is not rendered ineffectual by the act of the grantee in giving the deed into the custody of the grantor for safekeeping. *Id.* It is all a question of the intention of the parties, which may be manifested by words or acts or both. *Id.*

[26-29] If a deed, although acknowledged, is not recorded and is in the grantor's possession at the time of his death, those circumstances, unless explained, are deemed conclusive that the parties did not intend a complete transfer. *Id.* There is a presumption of nondelivery if the evidence shows that a deed was in the grantor's possession at the time of his death and was not then recorded. *Id.* Such a showing places upon the grantees the burden of going forward with the evidence, more accurately, the burden of persuasion, to rebut the presumption of nondelivery. *Id.* The burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence, and to constitute a valid delivery of a deed there must be an intent on the part of the grantor that the deed shall operate as evidence of title to take effect presently. *Id.* When a deed is found in the grantee's possession during the lifetime of the grantor, this is prima facie evidence of delivery, and the burden of proof is upon the one who disputes this presumption. *Id.*

[30] The district court in this case found it undisputed that Eugene and Ruth signed the quitclaim deeds on March 31, 2008, and that Steven recorded those deeds on May 17, 2013. The court stated that the burden of proof of delivery shifts to Steven to prove by a preponderance of evidence. The court concluded that Steven presented no evidence to prove delivery of the quitclaim deeds by Eugene and Ruth and concluded that there was no delivery of the quitclaim deeds by Eugene and Ruth. Contrary to Steven's assertions, the court made no findings about who was in possession of the deeds, constructively or otherwise, as of the date of Ruth's death. Further, the record is not particularly enlightening on this issue, and given that Eugene and Ruth, in different capacities, were both the

grantors and grantees, any inferences about the effectiveness of delivery based on who possessed the deeds at any given time is less useful than an examination of Eugene's and Ruth's words and actions as evidence of their intent. See *In re Estate of Plance*, 175 A.3d 249 (Pa. 2017) (where same individual is both deed's grantor and its sole grantee, no justifiable inference regarding effectiveness of delivery may be drawn merely from that individual's continuous possession and control of deed). A determination of whether summary judgment was properly granted then rests on whether there are genuine issues of material fact with respect to Eugene's and Ruth's intent as to the effectiveness of the deeds as evidence of title.

[31] On appeal, Steven essentially argues that summary judgment was improper because there was at least some evidence that Eugene and Ruth intended to convey the real property at issue to the 2008 Trust. He cites several out-of-state cases addressing methods of creating a trust, which cases cite to the Restatement (Second) of Trusts § 17 (1959) and the Restatement (Third) of Trusts § 10(c) at 145 (2003) (trust may be created by "a declaration by an owner of property that he or she holds that property as trustee for one or more persons"). In this declaratory judgment action, of course, the district court was not asked to rule on whether the 2008 Trust agreement created a valid trust; rather, it was asked to declare that the quitclaim deeds were not valid transfers of an interest in real estate. We do, however, consider the language of the 2008 Trust agreement in considering whether there was a genuine issue of material fact with respect to Eugene's and Ruth's intent as to the deeds. The trust agreement specified only, "We will . . . transfer . . . to the Trustee certain property to be made part of the Trust Estate." The agreement does not contain any reference to the particular property represented by the deeds or any indication of when Eugene and Ruth planned to make such a transfer, but the fact that the 2008 Trust agreement and the quitclaim deeds were executed on the same date has some relevance. See *In*

*re Wendland-Reiner Trust*, 267 Neb. 696, 677 N.W.2d 117 (2004) (when there are two or more instruments relating to trust, they should be construed together to carry out settlor's intent). The 2008 Trust agreement did identify specific property, including property at issue in this case, in the section concerning "Specific Distributions of Trust Estate." The evidence is undisputed, however, that Daubman told Eugene and Ruth that they would need to record the deeds in order to fund the trust. And, Daubman's undisputed testimony indicates at least some uncertainty by Eugene and Ruth as to how they wanted to distribute their property. The deeds were not recorded during either Eugene's or Ruth's lifetime, and Ruth was the record owner of the property at issue on the date of her death.

The undisputed facts also show that Eugene and/or Ruth took numerous acts inconsistent with an intent of making the deeds effective transfers of title. These acts included executing a deed of trust in their individual capacities, paying real estate taxes on the property as individuals, entering a crop share lease for the property as an individual, receiving various agricultural program payments with respect to the property, and reporting the payments on their individual tax returns.

Viewing and construing the evidence in the light most favorable to Steven and giving him the benefit of all reasonable inferences deducible from the evidence, we conclude that there is no genuine issue of material fact concerning the lack of delivery of the quitclaim deeds at issue by Eugene and Ruth to the 2008 Trust. The court did not err in granting Susan's motion for summary judgment and finding that the quitclaim deeds are void.

*Motion to Vacate.*

Steven asserts that the district court erred in denying his motion to vacate. In denying Steven's motion, the district court observed that a motion for new trial is not a proper motion after the entry of summary judgment, and it stated:

The sole result sought by [Steven's] motion is a new trial or to vacate the summary judgment. No other remedy is sought. The motion cannot reasonably be construed as a motion to alter or amend. The Court finds that [Steven's] *Motion For New Trial Or For Order Vacating Judgment* cannot be interpreted as anything other than a motion for new trial under *Neb. Rev. Stat.* §25-1142.

The court then denied Steven's motion.

[32] We agree that the court incorrectly determined Steven's motion could not be construed as being a motion to alter or amend, and we address that issue below. However, because we have already determined that the court did not err in granting Susan's motion for summary judgment, we need not further address the substantive issues raised in Steven's motion to vacate. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018).

[33,34] "A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court." Neb. Rev. Stat. § 25-1142 (Reissue 2016). At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). It does not resolve the factual issues. *Id.* A motion for new trial following the entry of summary judgment is not a proper motion. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[35-39] However, an appellate court reviews a postjudgment motion based on the relief it seeks, rather than its title. *Id.* Under Neb. Rev. Stat. § 25-1329 (Reissue 2016), if a postjudgment motion seeks a substantive alteration of the judgment—as opposed to the correction of clerical errors or relief wholly collateral to the judgment—a court may treat the motion as one to alter or amend the judgment. *Clarke v. First Nat. Bank of Omaha, supra*. In order to qualify for treatment

as a motion to alter or amend a judgment, the motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment. *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005). In cases involving a motion to alter or amend the judgment, a critical factor is whether the motion was filed within 10 days of the final order, because a timely motion tolls the time for filing a notice of appeal. *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013). Under § 25-1329, a motion for reconsideration is the functional equivalent of a motion to alter or amend a judgment. *Clarke v. First Nat. Bank of Omaha, supra.*

In *Clarke v. First Nat. Bank of Omaha*, the appellant filed a motion entitled "'Motion for New Trial to Amend Judgment of Summary Judgment Order'" 4 days after the trial court granted a motion for summary judgment. 296 Neb. at 636, 895 N.W.2d at 288. In his motion, the appellant asked the court to vacate its summary judgment decision and hold trial to resolve genuine issues of material fact. The request was based on grounds including claims of irregularities in the proceedings and that the summary judgment order was contrary to law. On appeal, the Nebraska Supreme Court determined that the motion was effectively a motion for reconsideration, which the Supreme Court treated as a motion to alter or amend. See, also, *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004) (treating timely filed motion for new trial following summary judgment as motion for reconsideration where motion asked court to grant new hearing based upon newly discovered evidence); *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004) (treating timely filed motion as motion to alter or amend under § 25-1329 where motion asked court to vacate order dismissing petition on basis that decision was contrary to law).

[40] In this case, Steven, as the personal representative of Eugene's estate, filed his motion for new trial or for order vacating judgment within 10 days of the entry of summary

judgment. He asked the district court for a new trial or to vacate the summary judgment, alleging grounds including that the court's decision was not sustained by sufficient evidence and was contrary to law. Steven was effectively asking the court to reconsider its decision, which is equivalent to a motion to alter or amend under § 25-1329. See *Clarke v. First Nat. Bank of Omaha, supra*. The court erred in concluding otherwise. Nonetheless, because the court did not err in granting summary judgment, Steven's motion to vacate was properly denied. While the court did not address the substance of Steven's motion, it reached the correct result. A correct result will not be set aside even when the lower court applied the wrong reasoning in reaching that result. *Bel Fury Invest. Group v. Palisades Collection*, 19 Neb. App. 883, 814 N.W.2d 394 (2012).

## CONCLUSION

The district court did not err in failing to dismiss for lack of an indispensable party, granting summary judgment, or denying Steven's motion to vacate.

AFFIRMED.