IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JOHNSON V. JOHNSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MELISSA R. JOHNSON, APPELLEE,

V.

ERIC W. JOHNSON, APPELLANT.

Filed September 14, 2021.    No. A-21-020.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Phillip Wright for appellant.

Catherine Dunn Whittinghill, of Marks, Clare & Richards, L.L.C., for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Eric W. Johnson appeals from an order of the district court for Douglas County which denied his application to modify custody of his and Melissa R. Johnson's minor children. He also appeals from a second order which granted Melissa's motion to alter or amend and ordered him to pay child support. Based on the reasons that follow, we affirm.

BACKGROUND

A decree of dissolution was entered in September 2018 ending the marriage between the parties. Based on an agreement by the parties, they were awarded joint legal and physical custody of their two minor children, Caleb, born in 2005, and Polly, born in 2010. The parenting time rotated on a week on/week off schedule. Also by agreement of the parties, neither party was

- 1 -

ordered to pay child support. This was a slight deviation from the Nebraska Child Support Guidelines.

In August 2019, Eric filed an application to modify the decree seeking sole legal and physical custody of the children. He alleged that material changes in circumstances had occurred since entry of the decree, specifically that Melissa was cohabitating with a boyfriend and it was having a detrimental effect on the children; that Caleb had poor and failing grades in school due to Melissa's lifestyle and boyfriend; that Melissa interfered with Eric's parenting time; and that the children wanted to live with Eric full time. Eric also asked that Melissa be ordered to pay child support pursuant to the Child Support Guidelines.

Melissa filed an answer and counterclaim for modification of decree also alleging that material changes in circumstances had occurred and requesting that she be awarded sole legal and physical custody and for child support to be determined based upon the guidelines.

At trial, Eric testified that Melissa was living with her boyfriend, Adam, before the decree was entered, but claimed he did not know it at the time. Melissa testified that Eric knew she was living with Adam at the time the decree was entered. Eric believed that Melissa's living with Adam was having a detrimental effect on the children because she was being influenced by him to make bad choices. When asked how he knew the children were being detrimentally effected, he responded that it was "probably too early to tell" and that it felt like there was going to be a detrimental effect on them eventually. He testified that the children were not showing any detrimental effects at the time of trial.

Eric testified that the children are in an unhealthy environment when they are with Melissa, and he claimed that Melissa was an unfit parent. He believed that Melissa consumed alcohol on a regular basis. His belief was based on how much she drank when they were married and what he had heard from other people. Eric was also concerned about Adam verbally and physically abusing the children. He testified that Caleb told him Adam hit him on one occasion and also called him names.

Melissa testified that Eric objected to her alcohol consumption during the marriage. She also admitted that Caleb had expressed concern about how much she drinks but she attributed that to Eric telling the children during the marriage that she had a drinking problem.

Kenneth Shreck, Adam's stepfather, testified that he has observed Melissa and Adam drink excessive amounts of alcohol in the presence of the children. He specifically recalled two holidays that this occurred--Christmas Eve 2018 and July 4, 2019. He testified that when Adam consumes alcohol, he yells at the children and calls them names, and that he "backhands" Caleb in the testicles, which Adam called "the sack tap game." Shreck stated that he did not believe Adam's intent was to cause injury or pain, but Shreck considered it physical abuse. He also testified that Adam often goes into a "rage" after consuming alcohol.

Shreck also testified that Melissa had been present when Adam was verbally and physically abusing the children and did nothing to stop it. Rather, she would say that Adam was just playing with them. Shreck testified that Melissa and Adam presented a danger to the children because of their drinking and because of the anger he has seen in both of them.

Shreck testified that July 2019 was the last time he saw Melissa with her children. He testified that he and Adam's mother are no longer welcome at Melissa and Adam's home and they have been told by Melissa and Adam that they are no longer considered family.

Melissa testified that she did not know if Adam had hit Caleb in the testicles and she had never witnessed Adam verbally abuse the children. She denied that Adam yells at or insults the children and stated that Adam and the children "joke around."

In regard to Eric's claim that Melissa was interfering with his parenting time, he testified that there was one time when he told her he was going to be late picking up the children and it was a "big deal" for her to wait 10 to 15 minutes until he got there. He also testified that Melissa requires him to email her before he can talk to the children on the phone during Melissa's weeks of custody. He testified that this is disruptive to his communication with the children because sometimes Melissa will email him back saying that the children are busy and they will call him later, but he does not get a call.

There was evidence presented by both parties that Caleb had struggled in school in the past. Eric testified that Caleb's school issues started when the parties were still married, but got worse after the parties split up. He testified that when Caleb was in middle school he failed to complete his homework, which in turn affected his grades. Melissa agreed that Caleb had struggled with school since fifth grade, particularly in one class. Both parties testified that Caleb would not do his homework when at either parent's home and would lie about having finished it. Eric testified that he helped Caleb get back on track and that Caleb's grades were much better at the time of trial. The evidence showed that Caleb received good grades in eighth grade, the most recent grade he had completed at the time of trial.

Caleb testified in chambers, stating that he wanted to live with his father full time because Adam makes jokes that hurt his feelings and "sometimes [he] feels like that [he's] just not cared for with them." He stated there was not anything else that Adam does that he does not like, and he denied that Adam had ever hit him or physically abused him in any way. He testified that he had never observed Adam physically or verbally abuse Melissa and that he never yelled at or insulted Polly.

Caleb also stated that there have been times when he has asked to go to Eric's house during Melissa's parenting time. When asked why he wanted to go to his dad's house, Caleb stated that he just did not feel like being at his mom's house. A text message from Caleb to Eric was also entered into evidence stating that his mom and Adam were in the bathroom and he was hearing noises that he did not like and he wanted to go to his dad's house. Caleb testified that he did not remember why what he heard upset him or why he wanted to go to his dad's house.

Melissa testified that neither child has ever told her that they want to live full time with Eric. She acknowledged that she knew of two times Caleb had told Eric he wanted to go to his house during her parenting time. She explained that the first time was shortly after Adam moved in and the other time was after she and Caleb had an argument.

In regard to child support, both parties testified about their current income and offered proposed child support worksheets. Eric testified that he is employed by Cox Communications and earns $29 per hour and works 40 hours per week. He offered and the trial court accepted into evidence copies of his 2018 and 2019 tax returns, as well as pay stubs from his employer. Eric presented a child support worksheet with a calculation of child support under a sole custody calculation. Over Melissa's objection, the court accepted it as an aid to the court.

Melissa testified that she works as the clerk for the Village of Waterloo and earns just over $25 per hour, working 40 hours per week. She had been employed by the Village of Waterloo for

14 years. She had no other sources of income. Melissa presented a proposed child support worksheet with a joint physical custody child support calculation. The trial court accepted it as an aid to the court over Eric's objection.

Following trial, the trial court entered an order on November 12, 2020, finding that neither party had satisfied his or her burden to prove a material change in circumstance justifying a change of custody. The court dismissed Eric's application to modify and Melissa's counterclaim with prejudice.

On November 19, 2020, Melissa filed a motion to alter or amend the court's November 12 order alleging that the court did not address either party's request that child support be determined pursuant to the Child Support Guidelines. She requested that the November 12 order be amended to find that she provided sufficient evidence at trial to establish a material change in circumstances with regard to child support, specifically Eric's increase in income that occurred subsequent to the entry of the original decree and was not contemplated when the decree was entered. Melissa further requested that the court find that it was in the children's best interests that Eric be required to pay child support. Eric filed an objection to the motion.

Following a hearing on Melissa's motion to alter or amend, the trial court entered an order in December 2020 finding that Melissa had satisfied her burden to prove that a material change in circumstances had occurred in regard to child support. It found that both parties had increased income since the entry of the original decree in a sufficient amount which, when put into a child support calculation, would increase the monthly child support by more than 10 percent. It ordered Eric to pay Melissa $187 per month in child support for two children, and $130 per month for one child.

## ASSIGNMENTS OF ERROR

Eric assigns that the trial court erred in (1) failing to find it did not have jurisdiction to consider Melissa's motion to alter or amend, (2) failing to dismiss Melissa's motion to alter or amend because she was requesting collateral relief, (3) modifying child support, and (4) failing to award him sole legal and physical custody of the children.

## STANDARD OF REVIEW

A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020).

## ANALYSIS

*Motion to Alter or Amend.*

Eric's first two assignments of error relate to the court's decision to address Melissa's motion to alter or amend. He argues that the court did not have jurisdiction to consider the motion

because the trial court's November 12, 2020, order was a final order. He also argues that the motion should have been dismissed because Melissa was requesting collateral relief. We conclude that both of these assignments of error fail.

Neb. Rev. Stat. § 25-1329 (Reissue 2016) requires that a motion to alter or amend be filed no later than 10 days after the entry of the judgment. And, under Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2020), such a motion timely filed terminates the running of the time for filing a notice of appeal as to all parties. *Gebhardt v. Gebhardt*, 16 Neb. App. 565, 746 N.W.2d 707 (2008). In order to qualify for treatment as a motion to alter or amend a judgment, the motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment. *Bayliss v. Clason, supra*.

The plain language of § 25-1329 allows a court to consider a motion to alter or amend after a judgment has been filed as long as the motion is filed within 10 days of the judgment. A judgment is defined as "the final determination of the rights of the parties in an action." Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2020). The November 2020 order was a final determination of the rights of the parties and Melissa filed her motion to alter or amend within 10 days after entry of the November 2020 judgment.

Further, as stated above, a proper motion to alter or amend must seek a substantive alteration of the judgment, as opposed to the correction of clerical errors or relief wholly collateral to the judgment. See *Bayliss v. Clason, supra.* A motion that merely seeks to correct clerical errors or one wholly collateral to the judgment is not a motion to alter or amend. See *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002). When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

Melissa's motion requested a substantive alteration to the trial court's November 2020 order, specifically, that the order be amended to find that she provided sufficient evidence at trial to establish a material change in circumstance with regard to child support. Melissa's motion to alter or amend was not a collateral attack because it was not brought before a separate court or filed in a separate action. Rather, the motion was filed in the same court as the original action and the motion was filed under the same case with the same parties. Further, the motion does not seek the correction of clerical errors.

The purpose of § 25-1329, like many other provisions of Nebraska law, is to save parties from the delay and expense associated with unnecessary appeals, which can often be avoided by providing every reasonable opportunity for a lower court to correct its own mistakes. *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). No court is required to persist in error, and, if a court concludes that a former ruling was wrong, the court may correct it at any time while the case is still in the court's control. *Id.* Section 25-1329 enables a district court to give thoughtful consideration to an assertion that it has made a mistake, without prejudicing the rights of the party making the assertion. And it encourages a party to do so in good faith, knowing that its right to appeal will not be lost because of continued running of the time for appeal. See *id.*

Melissa brought her motion to alter or amend to allow the court an opportunity to correct its own mistake and to avoid an unnecessary appeal, as is the purpose of such motion.

In summary, the motion to alter or amend was timely filed after entry of the November 2020 judgment and sought a substantive alteration to the judgment, not clerical or collateral relief. Accordingly, the court had jurisdiction to consider the motion. Eric's first two assignments of error fail.

*Modification of Child Support.*

Eric next assigns that the trial court erred in modifying child support. The party seeking the modification of child support has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification. *Langley v. Langley*, 29 Neb. App. 780, 959 N.W.2d 291 (2021). A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Id.* But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Id.*

The Child Support Guidelines include a provision that attempts to provide more predictability in determining the existence of a material change in circumstances. *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012). A rebuttable presumption establishing a material change of circumstances occurs when application of the child support guidelines results in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months. *Id.*; Neb. Ct. R. § 4-217.

The court noted that Melissa's counterclaim for modification did not specifically allege a material change in circumstance justifying a change in child support. However, both parties sought a change in child support in their pleadings, thereby making child support an issue submitted to the court for its consideration. Eric's application to modify asked the court to award him "sole legal and physical custody . . . , for [Melissa] to pay child support . . . pursuant to the Nebraska Child Support Guidelines." Melissa's counterclaim for modification of decree sought "sole legal custody and sole physical custody of the parties' minor children; for child support, to be determined by the Nebraska Child Support Guidelines. . . ." Melissa's request for a modification of child support was not contingent upon her obtaining sole custody. Rather, it simply sought child support based upon the Child Support Guidelines.

Further, as the trial court found, both parties presented evidence at trial pertaining to the issue of child support. Specifically, Eric and Melissa both presented evidence of their current incomes. The trial court found that the incomes of both parties had increased since the decree was entered and when put into a child support calculation, increased the child support obligation by more than 10 percent. See § 4-217. There was no evidence to indicate that the change in either parties' income was temporary and would not continue into the future.

Eric contends that the parties agreed in the original decree that there would be no modification of child support in the future. We do not find that to be true based on the language in the decree, but more importantly, child support orders are always subject to review and modification. *Langley v. Langley, supra.*

We conclude that the trial court did not abuse its discretion in finding that application of the child support guidelines would result in a variation by 10 percent or more of the current child

support calculation and therefore, Melissa had created a rebuttable presumption of a material change in circumstance as to child support in accordance with § 4-217. Eric did not rebut this presumption. Eric's third assignment of error fails.

*Failure to Modify Child Custody.*

Finally, Eric assigns that the trial court erred in failing to modify custody and award him sole legal and physical custody of the parties' children. In his application to modify, Eric alleged that material changes in circumstances had occurred which included: (1) Melissa was living with her boyfriend which was having a detrimental effect on the children, (2) Caleb was receiving poor and failing grades due in part to Melissa, (3) Melissa was interfering with Eric's parenting time, and (4) the children wanted to live with Eric.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). This showing has been described as a two-step process: First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.*

The Nebraska Supreme Court has long described a material change in circumstances as the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.* The Supreme Court has also explained that if a change in custody is to be made, it should appear to the court that the material change in circumstances is more or less permanent or continuous and not merely transitory or temporary. *Id.*

Eric claimed that the children were being detrimentally affected by Melissa living with Adam. Eric testified that he did not know Melissa was living with Adam at the time the decree was entered, but Melissa disputed that, stating that Eric did know. Regardless of whether Eric knew or not, he alleged that Melissa's cohabitation with Adam was having a detrimental effect on the children.

Eric testified that he believed Melissa consumed alcohol on a regular basis and was concerned about Adam verbally and physically abusing the children. However, Eric testified that although he feels like the children will be detrimentally affected at some point by Melissa's cohabitation with Adam, they were not showing any negative effects at the time of trial.

In addition, Caleb did not testify that excessive alcohol consumption or any type of abuse by Adam was occurring. He testified that Adam makes jokes that hurt his feelings, but denied any physical abuse and did not testify to any concerns about drinking. He also denied that Adam ever yelled at or insulted Polly. There was no other evidence in regard to Adam's treatment or interaction with Polly.

There was testimony from Shreck that he had observed Melissa and Adam drinking excessively and observed Adam yell at the children and call them names, and inappropriately touch Caleb. Shreck also testified that Melissa did not defend the children. As the trial court found, Shreck's testimony about Melissa and Adam's alcohol consumption was based on a few times he was present for holiday visits. Further, Shreck's testimony regarding the relationship between the

children and Adam was fairly general and failed to provide specific testimony as to when certain behavior by Adam occurred or how often. Shreck had not been to Melissa and Adam's home since July 2019 and he and his wife are no longer welcome at their home.

Based on all the evidence presented, Eric failed to prove that a material change in circumstance had occurred and that the children were being detrimentally affected by Melissa's living with Adam. Eric even admitted that they were not showing any harmful effects at the time of trial.

Eric also alleged that Caleb was doing poorly in school. However, the evidence showed that Caleb had been having issues with turning in homework and receiving poor grades for several years. Eric testified that Caleb's school issues started when the parties were still married. Therefore, this was a circumstance known at the time of the decree. In addition, at the time of trial, Caleb's grades had significantly improved.

In regard to Eric's claim that Melissa was interfering with his parenting time, Eric only testified that Melissa was upset one time when he was late picking up the children and that Melissa requires him to email her before he can talk to the children in the evening during her weeks of custody. Such evidence is insufficient to amount to a material change in circumstance.

Eric also claimed that there was a material change in circumstance because the children had expressed that they wanted to live full time with him. Caleb testified in chambers that he would prefer to live with his dad because Melissa's boyfriend makes jokes that hurts his feelings and "sometimes [he] feels like that [he's] just not cared for with them." Caleb did not elaborate further on either of these general allegations. He stated there was not anything else that Adam does that he does not like, and he denied any physical abuse by Adam.

Melissa testified that the children have never told her that they want to live with Eric. Both parties and Caleb testified that there have been instances where Caleb was at his mom's house and indicated he wanted to go to Eric's house, but those instances were limited to particular times. He was indicating that he wanted to live with Eric full time during these instances.

Eric also testified that Polly has never asked to live with him full time. There was no other evidence in regard to Polly's preference. We agree with the trial court that the evidence in regard to Caleb's preference of living with Eric does not satisfy the burden to prove a material change in circumstance to warrant modifying custody.

Based on our de novo review, Eric did not prove that a material change in circumstance existed to warrant modifying custody and awarding him sole legal and physical custody. His final assignment of error fails.

## CONCLUSION

We conclude that the trial court did not err in denying Eric's application to modify custody, and did not err in granting Melissa's motion to alter or amend and ordering him to pay child support.

AFFIRMED.